FILED

10/11/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0696

DA 15-0696

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 256

CITIZENS FOR A BETTER FLATHEAD,
a Montana nonprofit public benefit corporation,

      Plaintiff and Appellant,

   v.

BOARD OF COUNTY COMMISSIONERS
OF FLATHEAD COUNTY, a political subdivision
of the State of Montana and the governing body of
County of Flathead, acting by and through Dale W. Lauman,
Pamela J. Holmquist, and Calvin L. Scott,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                      In and For the County of Flathead, Cause No. DV-12-1304(C)
                      Honorable Heidi Ulbricht, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            John F. Lacey, McGarvey, Heberling, Sullivan & Lacey, PC, Kalispell,
            Montana

      For Appellee:

            Alan F. McCormick, Garlington, Lohn & Robinson, PLLP, Missoula,
            Montana

            Tara R. Fugina, Flathead County Attorney's Office, Kalispell, Montana

                              Submitted on Briefs:  June 29, 2016
                                       Decided:  October 11, 2016

Filed:

                          _____
                                     Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Citizens for a Better Flathead (Citizens) appeals the District Court's rejection of its challenge to Flathead County's 2012 Revised Growth Policy. Citizens asserts that both the Flathead County Planning Board (Planning Board or Board) and the County Commission (Commission) violated public rights protected by Montana's constitution and statutes when they developed the revised policy without adequate public participation. Citizens also claims that the County failed to follow its own procedures for amending the growth policy. We agree with the District Court that the alleged irregularities do not invalidate the revised growth policy. Because the growth policy lacks the force of law, we likewise affirm the District Court's refusal to strike from it what Citizens calls the "property rights trump card."

¶2 We address Citizens' claims in the following issues:

*1. Whether the District Court abused its discretion in striking Citizens' expert report.*

*2. Whether the District Court erred in determining that the Commission complied with the growth policy's mandatory procedures for adopting revisions.*

*3. Whether the District Court erred in determining that the Commission allowed meaningful public participation in the revision process.*

*4. Whether the District Court erred in determining that the Commission adequately incorporated public comments into its decision-making process.*

*5. Whether the final clause in Part 6 of the revised growth policy survives constitutional scrutiny.*

**PROCEDURAL AND FACTUAL BACKGROUND**

¶3      The Commission adopted the original Flathead County Growth Policy in March 2007.  The growth policy's terms required the Planning Board to review the policy at least every five years and to make recommendations to the Commission as to what changes to the original policy, if any, it should adopt.  In anticipation of the five-year deadline, the Planning Board prepared a proposed "work plan" for the growth policy update process and forwarded it to the Commission for consideration.  On January 3, 2011, the Commission adopted a resolution requesting that the Planning Board update the growth policy as proposed by the work plan.

¶4      Shortly after the Commission's resolution, the Planning Board announced through a press release that it was commencing a revision process.  Over the next year, the Planning Board held approximately twenty public workshops to solicit public comment and to discuss revisions to the growth policy.

¶5      The Planning Board presented a "first final draft" of the revised growth policy at a public hearing on February 15, 2012.  Members of the public offered comments on the draft.  Over the next few months, the Planning Board held four additional public workshops and continued to refine the draft policy.

¶6      The Planning Board released a "second final draft" in April 2012, and solicited comments on this draft at another public hearing in June.  The Planning Board discussed these public comments at its next meeting.  The Board voted to forward the policy to the Commission for approval.

¶7     The Commission passed a resolution of intent to adopt the Planning Board's proposed revised growth policy and initiated a thirty-day public comment period. After the comment period ended, the Commission held a meeting on October 12, 2012. At that meeting, it approved the revised growth policy. The October meeting, along with all of the Planning Board's public workshops and hearings, was recorded onto DVD. The Commission did not issue written findings of fact explaining its rationale for approving the policy.

¶8     Citizens brought suit, claiming that the Commission's adoption of the revised growth policy violated Montana statutes, the Montana Constitution, and Flathead County's own procedures. In support of its claims, Citizens submitted an expert report of Kathleen McMahon. The District Court granted the Commission's motion to strike McMahon's report. Citizens and the Commission filed cross-motions for summary judgment on the question whether the revised growth policy's adoption complied with the law. The District Court granted the Commission's motion, reasoning that the growth policy revision process did not violate any statutory, constitutional, or regulatory provisions. Citizens appeals.

## STANDARDS OF REVIEW

¶9     It is within a district court's discretion to determine whether evidence is relevant and admissible. *State v. Hocevar*, 2000 MT 157, ¶ 54, 300 Mont. 167, 7 P.3d 329. District courts are vested with great latitude in ruling on the admissibility of expert testimony. *Hocevar*, ¶ 54. Absent a showing of an abuse of discretion, we will not overturn a district court's determinations on evidentiary matters. *Hocevar*, ¶ 54.

¶10 We review de novo a district court's ruling on summary judgment, applying the criteria of M. R. Civ. P. 56(c)(3). *Pilgeram v. GreenPoint Mortg. Funding, Inc.*, 2013 MT 354, ¶ 9, 373 Mont. 1, 313 P.3d 839. We review a district court's conclusions of law to determine whether they are correct and its findings of fact to determine whether they are clearly erroneous. *Pilgeram*, ¶ 9.

¶11 We review a governing body's decision to amend or revise its growth policy—a legislative act—for an abuse of discretion. *North 93 Neighbors, Inc. v. Board of Cnty. Comm'rs of Flathead Cnty.*, 2006 MT 132, ¶ 18, 332 Mont. 327, 137 P.3d 557.

¶12 This Court's review of constitutional questions is plenary. *Williams v. Bd. of Cnty. Comm'rs*, 2013 MT 243, ¶ 23, 371 Mont. 356, 308 P.3d 88.

**DISCUSSION**

¶13 *1. Whether the District Court abused its discretion in striking Citizens' expert report.*

¶14 Kathleen McMahon is a professional land-use planner. At Citizens' request, she reviewed the audio and video recordings of the Planning Board's and the Commission's public meetings. She then prepared a report discussing the growth policy's revisions and the process employed in preparing and adopting those revisions. Citizens proffered her report as evidence.

¶15 The District Court struck the report on a number of grounds, among which was that it contained legal conclusions. Citizens argues that the report is admissible because it served the primary purpose of assisting the trier of fact to understand the content of the numerous recorded public workshops and hearings. Citizens alternatively argues that,

5

even if the District Court rightly identified certain portions of the report as inadmissible, the remaining portions should have been admitted.

¶16 The McMahon report's stated purposes include: (1) determining if the growth policy revision process "followed requirements mandated by the Montana Code Annotated (MCA) and the process for updates that is specified in the Flathead County Growth Policy"; (2) reviewing key revisions to the growth policy to determine if they are "consistent with the requirements of the MCA"; and (3) assessing whether the revision process "provided meaningful public participation in accordance with the MCA and the county's own obligations." The report analyzes whether the Commission's and the Planning Board's activities conformed to the growth policy's guidelines for revision and complied with Montana statutory, constitutional, and case law.

¶17 Montana law permits testimony by experts "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." M. R. Evid. 702. We have held, however, that "expert opinion that states a legal conclusion or applies the law to the facts is inadmissible." *Wicklund v. Sundheim*, 2016 MT 62, ¶ 15, 383 Mont. 1, 367 P.3d 403 (citing *Cartwright v. Scheels All Sports, Inc.*, 2013 MT 158, ¶ 43, 370 Mont. 369, 310 P.3d 1080). "Legal conclusions offered by an expert witness invade the province of the fact-finder, whose duty it is to apply the law as given to the facts in the case." *Wicklund*, ¶ 15 (citing *Perdue v. Gagnon Farms, Inc.*, 2003 MT 47, ¶ 28, 314 Mont. 303, 65 P.3d 570).

¶18 Rather than serving to "assist the trier of fact to understand the evidence or to determine a fact in issue," M. R. Evid. 702, the McMahon report primarily offers legal

conclusions. The report's stated purposes include determining whether the revision process met the legal requirements of Montana statutes and the procedural requirements of the County's growth policy. The report repeatedly applies the law to the Commission's and the Planning Board's actions. By applying the law to the facts of this case, the report impermissibly offers legal conclusions. *See Wicklund*, ¶ 15. We therefore hold that the District Court did not abuse its discretion in striking this report. *See Hocevar*, ¶ 54.

¶19 Similarly, we are unpersuaded by Citizens' argument that the District Court erred in excluding certain segments of the report that it argues are admissible, such as the summary tables and descriptions of the DVD recordings. These tables and descriptions mainly provided background information to support the report's legal conclusions. The District Court reasonably determined, within its broad discretion, that these portions of the report had little relevance independent of their relation to the report's legal conclusions. The court did not abuse its discretion in striking these segments of the report.

¶20 *2. Whether the District Court erred in determining that the Commission complied with the growth policy's mandatory procedures for adopting revisions.*

¶21 The District Court held that the Planning Board and the Commission properly observed the growth policy's revision procedures. It concluded that the Planning Board did not exceed its broad scope of review in revising the policy, that the revisions to the policy constituted "updates" rather than "amendments," and that the requirement to prepare findings of fact did not apply to the Commission or to the Planning Board.

¶22 Citizens argues that the Planning Board exceeded the scope of review defined in the original work plan and that the revisions constituted "amendments" to the growth policy rather than "updates." The Planning Board and the Commission, Citizens maintains, failed to comply with the original growth policy's requirements for amending the policy when they neglected to prepare written findings of fact. In the alternative, Citizens argues that even if the revisions to the policy constituted "updates," the Planning Board and the Commission failed to meet the requirements for updating the policy by not holding meetings "throughout" Flathead County.

¶23 The original growth policy described the requirements for updating or amending the policy. Chapter 9, Part 6, under the heading, "Growth Policy Update," provided in relevant part:

> At a minimum of every five years, the Planning Board shall prepare a draft revised Growth Policy . . . Goals and policies should be revised as needed to accurately reflect the present day needs of Flathead County . . . Public meetings shall be held throughout Flathead County to present revisions to the public and gather public opinion.

¶24 Chapter 9, Part 7, titled, "Growth Policy Amendments," stated as follows:

> Various events could potentially create a situation where certain goals, policies and/or implementation techniques are no longer adequate or appropriate. If this occurs prior to the regularly scheduled updates, the Flathead County Growth Policy may be amended . . . Amendments shall be subject to . . . preparation of findings of fact.

¶25 Montana law requires that "a governing body 'must be guided by and give consideration to' its growth policy." *North 93 Neighbors, Inc.*, ¶ 22 (quoting § 76-1-605, MCA). We have held that a governing body "must substantially comply with an adopted growth policy." *Heffernan v. Missoula City Council*, 2011 MT 91, ¶ 77, 360 Mont. 207,

255 P.3d 80; *North 93 Neighbors, Inc.*, ¶ 23. Chapter 9, Part 7 of the growth policy defines amendments as changes to the policy that occur "prior to the regularly scheduled updates." By contrast, Part 6 implies that updates are revisions to the growth policy that occur routinely—every five years at minimum.

¶26 The record shows that the revision process began with discussions of a Planning Board subcommittee in the fall of 2010, in anticipation of the April 2012 five-year deadline. The Commission's January 3, 2011 resolution—about four years after it adopted the initial policy—called for an "update" of the growth policy. The Commission approved the Planning Board's proposed work plan at the same time. The work plan stated a goal of "updating the Growth Policy by April 2012." "Rather than a wholesale update" of the growth policy, the work plan stated that "it would be most effective to focus on specific areas of the growth policy in most need of updating or clarification based on public input received as well as insight gleaned from working with the [growth policy] document over the past 4 years." The plan named three areas of "main focus" for the revision process, with two sub-topics under each.

¶27 The revised growth policy came about as part of a longstanding plan to update the growth policy every five years. Both the resolution and the work plan called for an update, and the resolution directed the Planning Board to consider "insight gleaned from working with the document over the past 4 years." The District Court correctly determined that the revisions to the growth policy constituted an update within the meaning of Chapter 9, Part 6.

¶28 Next, we agree with the District Court that the Planning Board did not exceed its scope of review as determined by the work plan. The flexible language of the work plan's phrases, quoted above, gave the Planning Board discretion and a wide-ranging directive to revise the growth policy, rather than a rigid set of instructions. Furthermore, Chapter 9, Part 6 of the growth policy states, "Goals and policies should be *revised as needed.*" (Emphasis added.) Taken together, this provision and the work plan's flexible language gave the Planning Board a broad directive to revise the policy. In expanding the revision process to include topics not specifically identified by the work plan, the revision process did not violate this directive.

¶29 Finally, the Planning Board and the Commission complied with the requirements for updating the growth policy. The policy calls for "preparation of findings of fact" only when the governing body initiates amendments pursuant to Chapter 9, Part 7 of the policy; thus, the absence of such findings here is immaterial. Rather, when a governing body revises a growth policy, it "must equip reviewing courts with a record of the facts it relied upon in making its decision to avoid judicial intrusion into matters committed to the Board's discretion." *North 93 Neighbors, Inc.*, ¶ 35. Citizens challenges the Board's processes, but it does not argue that any particular revisions are without support in the administrative record. The only requirement for updating the policy that Citizens claims the Commission and the Planning Board did not meet is the provision in Chapter 9, Part 6 that "[p]ublic meetings shall be held *throughout Flathead County* to present revisions to the public and gather public opinion." (Emphasis added.)

¶30 Citizens points out that the Commission and the Planning Board held meetings only in Kalispell and not in additional locations throughout the county. While true, we conclude that this failure alone does not require invalidating the revised growth policy. The record does not suggest that limiting the meetings to Kalispell negatively affected the Planning Board's presentation of revisions to the public, or that the public was limited in its ability to comment on the proposed changes. Citizens does not demonstrate how the numerous public meetings and hearings the Board and the Commission convened should be deemed substantial non-compliance with the growth policy on the single ground that all of those meetings occurred in one part of the county. *See Heffernan*, ¶ 77.

¶31 In conclusion, the Planning Board and the Commission substantially complied with the County's procedural requirements for updating the growth policy. The District Court's holding on this issue was correct.

¶32 *3. Whether the District Court erred in determining that the Commission allowed meaningful public participation in the revision process.*

¶33 In response to Citizens' public participation challenge, the District Court concluded that no statutory basis existed to invalidate the revised growth policy. In its view, the public participation statutes afforded Citizens no avenue for relief because the Planning Board was not an "agency" whose "decision" the law allowed the court to invalidate. The court therefore declined to consider further whether the Planning Board violated its public participation obligations.

¶34 Citizens asserts that the Planning Board failed to keep minutes of its meetings, failed to produce a comprehensive document highlighting in one place all the changes

11

made to the original growth policy, and failed to give adequate notice after its February 15, 2012 public hearing of what changes it was considering. These failures, in Citizens' view, amounted to statutory violations of Montana's open meeting laws and constitutional violations of the rights to know and participate.

¶35 The record shows that the Planning Board held over twenty public workshops at which it solicited public comment on proposed revisions to the growth policy. The Board held its first public hearing on February 15, 2012, to discuss the revised policy's "first final draft." The Board then held four additional public workshops between February and April to further revise the policy. On June 13, 2012, the Planning Board held a public hearing to discuss the policy's "second final draft." It posted the "second final draft" to the County's website well in advance of this hearing. The Planning Board continued discussion of this second draft at a public meeting the following month. Throughout the revision process, the Planning Board gave notice of the times, dates, locations, and agendas of its public workshops and hearings.

¶36 All of the Planning Board's public workshops and hearings were recorded onto DVD. The DVDs did not include written logs to help viewers access the contents. The Planning Board did not keep written minutes of its many public workshops, but it did keep minutes of its public hearings on February 15 and June 13, 2012, and of its public meeting in July 2012.

¶37 The Planning Board routinely posted "tracked-changes" versions of the growth policy's individual chapters to the County's website during the revision process. Neither

the Planning Board nor the Commission, however, provided the public with a single, comprehensive document identifying all of the proposed changes to the original policy.

¶38 The Commission entertained a thirty-day public comment period on the proposed revised growth policy, and then held a public meeting on October 12, 2012, to discuss the public comments received. At the beginning of the meeting, the Commissioners briefly solicited oral public comments. The Commission kept minutes of this meeting and recorded the entire meeting. At the conclusion of the public meeting, the Commission voted to approve the revised growth policy.

¶39 Article II, Section 8, of the Montana Constitution provides, "The public has the right to expect governmental agencies to afford such reasonable opportunity for citizen participation in the operation of the agencies prior to the final decision as may be provided by law." We have held that "[t]he essential elements of public participation" required by Article II, Section 8, are "notice and an opportunity to be heard." *Bitterroot River Protective Ass'n v. Bitterroot Conservation Dist.*, 2008 MT 377, ¶ 21, 346 Mont. 507, 198 P.3d 219. The public's right to participate requires more than simply an "uninformed opportunity to speak." *Bryan v. Yellowstone Cnty. Elementary Sch. Dist. No. 2*, 2002 MT 264, ¶ 44, 312 Mont. 257, 60 P.3d 381. The right to know is protected by Article II, Section 9, of the Constitution, which provides, "No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions." We analyze Article II, Sections 8 and 9, as coextensive provisions. *Bryan*, ¶ 31.

¶40 The Legislature implemented these constitutional rights by enacting §§ 2-3-101 to -221, MCA. *Bryan*, ¶ 24. The law requires that agencies "develop procedures for permitting and encouraging" public participation and provide adequate notice of their planned actions. Section 2-3-103(1)(a), MCA. It also requires that agencies give the public a "reasonable opportunity to submit data, views, or arguments." Section 2-3-111, MCA. Meetings of "public or governmental bodies [or] boards" must be open to the public. Section 2-3-203(1), MCA. The governmental bodies must either keep minutes of their meetings or create audio recordings accompanied by logs or time stamps. Section 2-3-212(1), (3), MCA.

¶41 Courts may void agency decisions reached in violation of these statutory provisions. Sections 2-3-114, -213, MCA. Montana law defines an agency as "any board, bureau, commission, department, authority, or officer of the state or local government *authorized by law to make rules, determine contested cases, or enter into contracts.*" Section 2-3-102, MCA (emphasis added). Courts may not use §§ 2-3-114 or -213, MCA, to invalidate decisions made by public bodies that are not agencies, even if those decisions violate the open meeting laws. *Allen v. Lakeside Neighborhood Planning Comm.*, 2013 MT 237, ¶ 31, 371 Mont. 310, 308 P.3d 956.

¶42 The Planning Board does not have the authority of an agency. Its duty is to recommend that the Commission adopt, reject, or take some other action with regard to the proposed revisions to the growth policy. Section § 76-1-603, MCA. The Planning Board's recommendations are not binding on the Commission. *Allen*, ¶ 28. Because the

Planning Board is not an agency as defined by law, the statutes do not authorize a court to invalidate its actions. *Allen*, ¶ 31; §§ 2-3-114 and -213, MCA.

¶43 While the Commission is an "agency" under § 2-3-102, MCA, it did not violate the open meeting laws. The Commission solicited public comment prior to and during its October 12, 2012 meeting, and it kept minutes at the meeting. The Commission provided the public with a "reasonable opportunity to submit data, views, or arguments." Section 2-3-111, MCA.

¶44 Citizens nonetheless contends that the Planning Board and the Commission deprived Citizens of the meaningful participation guaranteed by Article II, Sections 8 and 9, of the Montana Constitution. First, the record shows that the Planning Board gave advance notice of its public workshops and hearings. The Planning Board provided agendas for its public workshops between February and April 2012. The Commission solicited public comment on its proposed adoption of the revised growth policy for a thirty-day period prior to its October 12, 2012 meeting. These actions provided adequate notice under the law to the public regarding the Planning Board's and the Commission's deliberations. *See Bitterroot*, ¶ 21; § 2-3-103(1)(a), MCA.

¶45 Second, the Planning Board and the Commission allowed for public observation of their deliberations. All of the workshops, hearings, and meetings were open to the public and recorded onto publicly available DVDs. This fulfilled the constitutional obligation of permitting public observation. *See* Mont. Const. art. II, § 9; § 2-3-203(1), MCA.

¶46 Third, and finally, the Planning Board and the Commission gave the public reasonable opportunities to be heard during the deliberations, and these opportunities

15

amounted to more than uninformed opportunities to speak. *See Bryan*, ¶ 44. The Planning Board held over twenty workshops and multiple hearings at which it solicited public comments. The Board preceded each subsequent meeting with a release of changes made since the last meeting, and it posted those changes to its website for viewing. True, the County did not maintain a comprehensive document to illustrate all changes proposed. But the Planning Board did post a full proposed revised growth policy draft to the County's website well before the June 13, 2012 public hearing. Finally, the Board posted agendas of its workshops between its presentations of the first and second "final drafts" of the revised policy.

¶47 The Commission entertained a thirty-day public comment period prior to adopting the revised growth policy. Members of the public submitted 299 written comments in the form of emails, letters, and postcards, and a petition containing 451 signatures. We conclude that the public had ample reasonable opportunities through the workshops, the hearings, the website materials, and the comment period to be informed and to be heard by the Planning Board and the Commission. *See Bitterroot*, ¶ 21; *Bryan*, ¶ 44; § 2-3-111, MCA.

¶48 The Planning Board and the Commission met the constitutional requirements of Article II, Sections 8 and 9. They gave adequate notice of their deliberations, allowed the public to observe the meetings, and gave the public sufficient opportunities to be informed and heard. As such, neither the Commission nor the Planning Board infringed on the public's right to participate or right to know. For these reasons, we hold that the

District Court did not err in determining that the Commission allowed for meaningful public participation in the revision process.

¶49 Citizens takes issue with the complexity of the process and with the difficulty for the public in keeping abreast of the specific revisions under consideration and in following the details of the Planning Board's deliberative process. The statute commands a "reasonable opportunity" for public participation. Section 2-3-111, MCA. The court cannot dictate process to government agencies administering programs and functions within their authority. Instead, this Court's role is limited to assessing whether the Planning Board and the Commission fulfilled the obligations imposed by the Constitution and related statutes. We conclude that they did.

¶50 *4. Whether the District Court erred in determining that the Commission adequately incorporated public comments into its decision-making process.*

¶51 Citizens claims that the Commission, through its own actions and those of the Planning Board, failed to consider public comments, to incorporate those comments into the decision-making process, to summarize the comments, or to explain how the comments factored into its decision, in violation of the law. The District Court disagreed, reasoning that the Planning Board and the Commission received many public comments and that the record showed that these comments had at least some influence on their decision-making processes.

¶52 At the February 15, 2012 public hearing, Flathead County residents commented on the "first final draft" of the proposed revised version of the growth policy. The Planning Board then discussed those comments. The Planning Board's four public workshops in

17

the ensuing months included discussion of public input. The minutes of the Board's June 2012 public hearing reflect that the Board made revisions to the growth policy in the months following the February 2012 hearing based on its consideration of the public input received and on the Board's own discussions.

¶53 Members of the public offered additional comments on the revised growth policy's "second final draft" at the Planning Board's June 2012 public hearing. When the Planning Board met the next month, each member discussed his or her thoughts on the public comments received at the June hearing.

¶54 Under Montana law, the Planning Board was required to consider "the recommendations and suggestions elicited at the public hearing[s]," § 76-1-603, MCA, and to "incorporate those comments into its decision-making process," *North 93 Neighbors, Inc.*, ¶ 36. Here, the Planning Board's consideration and incorporation of public comment met the law's requirements. Board members discussed the public comments offered at the two public hearings. In the months following the February 15, 2012 hearing, the Board based its many revisions to the policy on public comments received at the workshops and on the Board's own discussions at those workshops. This record establishes that the Planning Board considered "the recommendations and suggestions elicited at the public hearing[s]" and "incorporate[d] those comments into its decision-making process." Section 76-1-603, MCA; *North 93 Neighbors, Inc.*, ¶ 36. The law does not require that specific public comment be incorporated into the final decision, only into the process.

¶55    The Commission also was required to consider and incorporate public comments into its process. Section 76-1-603, MCA; *North 93 Neighbors, Inc.*, ¶ 36. In addition, by County resolution, the Commission was required to "summarize" the comments received and to "explain" how the comments influenced its decision to approve the revised policy. Flathead County Resolution No. 2129, March 18, 2008 (stating that the "scope and format of such summarization and explanation may vary as appropriate for the type of decision and extent of public comment"). This resolution provides no specific requirement as to the form of the Commission's summary and explanation.

¶56    The Commission met on October 12, 2012, to discuss the public comments received as to the Commission's intent to adopt the revised growth policy. At that meeting, the Commissioners briefly summarized the comments and explained how the comments factored into their decisions. Commissioner Holmquist summarized the comments for and against the revised growth policy, and explained how the comments opposing the policy factored into her decision. Commissioner Scott and Chairman Lauman addressed specific issues with the growth policy that the public comments raised, including traffic, water quality, planning and zoning, and development along highways. We conclude that these discussions fulfilled the Commission's obligations to consider and incorporate public comments into its process, to summarize the comments, and to explain how the comments influenced its decision to adopt the revised growth policy.

¶57    Citizens argues that the Planning Board and the Commission could not possibly have considered all of the public comments from the revision process, given the volume

19

of comments received. The Planning Board members and Commissioners stated, however, that each had reviewed the public comments. It is not within this Court's purview to determine how sincere these county officials were in their assertions that they had reviewed all public comment or to assess how the comments factored into their decisions. The scope of our review is to determine, based on the record, whether the Planning Board and the Commission "consider[ed] the public comments and incorporate[d] those comments" into their decision-making processes. *North 93 Neighbors, Inc.*, ¶ 36. The record shows that they did. We therefore uphold the District Court's determination on this issue.

¶58  *5. Whether the final clause in Part 6 of the revised growth policy survives constitutional scrutiny.*

¶59  Citizens claims that a clause in Part 6 of the revised growth policy, which it refers to as the "property rights trump card," is unconstitutionally vague and that it violates Citizens' Article II, Section 3, constitutional right to a clean and healthful environment. Part 6 emphasizes the predominance of individual property rights and lists requirements that a growth policy must meet if it attempts to regulate the use of private property. It concludes with the following sentence: "In the event of a conflict between the provisions in this part and any other provision in this Growth Policy and [its] amendments, this part shall control." The District Court held that this clause did not violate the Constitution. It reasoned that the growth policy was not regulatory in nature, that the clause was not inherently vague, and that it did not encourage a violation of the constitutional right to a clean and healthful environment.

¶60 Montana law provides that "a growth policy is not a regulatory document and does not confer any authority to regulate that is not otherwise specifically authorized by law or regulations adopted pursuant to the law." Section 76-1-605(2)(a), MCA. Courts may strike down regulations as unconstitutional if they permit government action that conflicts with the Constitution. Because a growth policy "is not a regulatory document and does not confer any authority to regulate that is not otherwise specifically authorized by law," it is incapable of authorizing a governing body to take action that would conflict with the Constitution. Section 76-1-605(2)(a), MCA.

¶61 The revised growth policy, including the final clause of Part 6, provides guidance to the local governing body. The growth policy constitutes "the preeminent planning tool" for land use planning. *Heffernan*, ¶ 76. But it "cannot be applied in a 'regulatory' fashion," *Heffernan*, ¶ 78 (quoting § 76-1-605(2)(a), MCA), and thus bestows the Commission with no authority that it does not have under a statute or regulation. The clause cannot require Flathead County to take any action, much less any action that conflicts with the Constitution. We hold that, because this clause lacks the force of law, it cannot "trump" Citizens' constitutional rights. We agree with the District Court's conclusion that this clause is not unconstitutional.

**CONCLUSION**

¶62 The alleged procedural shortcomings in Flathead County's process for updating its growth policy do not rise to the level of either a statutory or a constitutional violation. The County's process was adequate to meet its obligations under the law. We affirm the

21

District Court's order and its decision to award summary judgment to the Commission on the validity of the County's 2012 revised growth policy.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ LAURIE McKINNON
/S/ JIM RICE