FILED

05/16/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0469

DA 16-0469

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 117

MOUNTAIN WATER COMPANY,

     Plaintiff and Appellee,

     v.

STATE OF MONTANA, DEPARTMENT OF REVENUE,

     Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
                In and For the County of Lewis and Clark, Cause No. DDV 15-18
                Honorable Kathy Seeley, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Daniel J. Whyte, Courtney Mathieson, Special Assistant Attorneys
           General, Department of Revenue, Helena, Montana

       For Appellee:

           Robert L. Sterup, Kyle A. Gray, Holland & Hart LLP, Billings,
           Montana

       For Amicus Curiae:

           Natasha Prinzing Jones, Scott M. Stearns, Randy J. Tanner, Boone
           Karlberg P.C., Missoula, Montana

                          Submitted on Briefs:  April 5, 2017

                                  Decided:  May 16, 2017

Filed:

                                 Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Appellant Department of Revenue (Department) appeals from the entry of summary judgment by the First Judicial District Court, Lewis and Clark County, in favor of Appellee Mountain Water Company ("Mountain Water" or "Company"), declaring that the City of Missoula (City) shall be assessed and be responsible for property taxes accruing on Mountain Water's property during the pendency of the City's action to condemn the property, and that such taxes paid by Mountain Water must be refunded by the Department with applicable statutory interest. We reverse, and address the following issue:

*Did the District Court err in its interpretation of § 70-30-315, MCA, regarding proration of taxes in a condemnation proceeding?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2 The parties and the District Court agreed that there were no conflicts of material fact. Mountain Water operates a water delivery system located in and around Missoula, which the City initiated an action to condemn, issuing a summons on April 2, 2014. The Fourth Judicial District Court issued a Preliminary Order of Condemnation under § 70-30-206, MCA, which this Court affirmed in *City of Missoula v. Mt. Water Co.*, 2016 MT 183, 384 Mont. 193, 378 P.3d 1113. Compensation has been determined in the proceeding, but no final order of condemnation has been issued pursuant § 70-30-309,

2

MCA, and title to and possession of the subject property remains with Mountain Water and its affiliated entities.[1]

¶3     Following initiation of the condemnation action, Mountain Water requested that the Department agree the Company was no longer responsible for property taxes and that the City be deemed responsible, citing § 70-30-315, MCA, which provides, in toto:

> **Proration of taxes.**  The condemnor must be assessed the condemnor's pro rata share of taxes for the land being taken as of the date of possession or summons, whichever occurs first.  The condemnor must be assessed for all taxes accruing after the date of possession or summons, whichever occurs first.

The City objected, stating that responsibility for taxes would shift after a judgment awarding possession was entered.  In a letter to the parties, the Department acknowledged that § 70-30-315, MCA, "may be subject to either of [their] interpretations," but concluded that, while the statute raised the issue of proration of taxes, "it is not conclusive evidence that there has been or is a transfer of ownership interest from Mountain Water to the [C]ity of Missoula."  The Department thus determined to "change ownership records only upon receipt of a transfer certificate from the clerk and recorder, or upon completion of the forms from the parties reporting the transfer and after filing of a realty transfer certificate" under the Realty Transfer Act, codified in Title 15 of the Montana Code, and would not shift

---

[1] On May 2, 2017, the City of Missoula filed an unopposed motion to stay appellate proceedings in *B & E Corp v. City of Missoula*, DA 16-0450, which states that the City and Mountain Water have agreed to settlement terms in the condemnation proceeding and the process of preparing a final written agreement is now underway.  However, the motion indicates the parties "have not settled the separate matter related to Mountain Water's payment of property taxes while the condemnation case has been pending," that the proposed settlement will not resolve the issues in the case *sub judice*, and that the parties continue to stand by the arguments made herein.

responsibility for taxes from Mountain Water. The Department has continued to issue property tax assessments naming Mountain Water as the responsible entity for the property taxes throughout the condemnation action. Mountain Water has paid taxes under protest.

¶4 Pursuant to § 15-1-406, MCA, Mountain Water filed a declaratory action against the Department, seeking a determination that § 70-30-315, MCA, required assessment of property taxes against the City from and after the date of the condemnation summons. The Department answered, seeking approval of its interpretation of the statutes. The City, as explained in its *amicus curiae* brief filed in this appeal, did not seek to intervene in the District Court based upon its understanding that Mountain Water's complaint was not requesting an order requiring payment of taxes by the City, but rather sought a refund of the taxes the Company had paid. The City notes that the Company's complaint specifically requested an order "declaring that *if Missoula takes possession of the subject properties by eminent domain*, then Mountain Water is entitled to an Order directing refund of the property taxes paid by Mountain Water under protest." (Emphasis added.)

¶5 Mountain Water's motion for summary judgment was granted by the District Court, which reasoned as follows:

> [Section 70-30-315, MCA,] sets forth an exception to the general assessment statutes when eminent domain is involved. Otherwise there would be no point to the statute—the general provisions of Montana Code Annotated § 15-7-304(2) would [always] govern. . . . [T]he City of Missoula, as condemnor, must be assessed for all taxes accruing on the subject property after April 2, 2014. Property taxes paid by Mountain Water under protest for any period after April 2, 2014 shall be refunded by [the Department], together with interest as required by the provisions of Montana Code Annotated § 15-1-402.

4

¶6     The Department appealed and the City moved to intervene before this Court, arguing that the assessment of taxes against the City was done *in absentia* and violated the City's due process rights.  The Court denied the City's request to intervene, but granted its request to file an *amicus curiae* brief.

## STANDARD OF REVIEW

¶7     We review de novo a district court's ruling on summary judgment, applying the criteria of M. R. Civ. P. 56(c)(3).  *Citizens for a Better Flathead v. Bd. of Cnty. Comm'rs*, 2016 MT 256, ¶ 10, 385 Mont. 156, 381 P.3d 555 (citing *Pilgeram v. GreenPoint Mortg. Funding, Inc.*, 2013 MT 354, ¶ 9, 373 Mont. 1, 313 P.3d 839).  We review a district court's conclusions of law to determine whether they are correct.  *Citizens for a Better Flathead*, ¶ 10 (citing *Pilgeram*, ¶ 9).

## DISCUSSION

¶8     *Did the District Court err in its interpretation of § 70-30-315, MCA, regarding proration of taxes in a condemnation proceeding?*

¶9     The Department argues that the District Court's order to assess taxes against the City violates the City's constitutional and statutory protections that exempt cities from property taxation, citing Article VIII, Section 5(1)(a) of the Montana Constitution ("The legislature may exempt from taxation . . . property of . . . municipal corporations . . . ."), and § 15-6-201(1)(a)(iv), MCA ("The following categories of property are exempt from taxation: . . . municipal corporations.").  The Department also argues it is bound by the Realty Transfer Act and accompanying regulations, which require that it assess Mountain Water for property it owns until a final order of condemnation is issued and recorded with

5

the clerk and recorder, citing § 15-7-304(2), MCA ("The department is not required to change any ownership records used for the assessment or taxation of real property unless the department has received a transfer certificate from the clerk and recorder and the transfer has been reported to the department as provided by rule."), and Admin. R. Mont. 42.20.204(1) ("The department shall not change to whom real property is assessed unless properly notified by means of an accurately prepared Realty Transfer Certificate . . . ."). The Department also argues that the District Court's interpretation results in an "absurd" windfall to Mountain Water by allowing it to profit from use of the property while avoiding property taxes during the pendency of the condemnation action, and, further, that the protested taxes were paid to Missoula County, and thus, the Department is the incorrect agency to issue a refund. The Department states that, even if it possessed authority to refund the protested taxes, "those taxes constitute an asset and appear [to be] subject to condemnation."

¶10   Mountain Water argues that the District Court properly interpreted § 70-30-315, MCA, according to its plain meaning, and properly concluded that it controls as the more specific statute for condemnation matters over the general tax provisions of the Realty Transfer Act. Mountain Water argues that although the statute grants a "small favoring of the condemnee," it is not absurd, given the fact that "the condemnation power granted to the condemnor is so draconian." Mountain Water argues that its request for an immediate refund was not challenged before the District Court and that the "technicality" of the County, not the Department, collecting the taxes is harmless. Finally, regarding the City's

6

claimed exemption from taxation, Mountain Water argues that "[a]ssessment does not equate to payment" and that the City has all legal avenues to pursue once it is assessed the taxes, which is "an issue between the City and the State entirely separate from this appeal by the State against a private taxpayer."

¶11 The City, as *amicus curiae*, argues that the District Court erred by ordering the Department to assess property taxes against the City because the City is tax-exempt. It argues that the District Court's order violated the City's due process rights because it ordered tax assessment against the City even though the City was not a party in the litigation. Finally, the City argues that the refund to Mountain Water ordered by the District Court, without ordering an accompanying refund to Mountain Water customers, will function as a windfall to Mountain Water because the property tax burden is a pass-through cost in the water rates approved by the Montana Public Service Commission and paid by water customers.

¶12 The parties' arguments tend to read more into this very short statute than is actually there, and extrapolate beyond the precise purpose of the legislation. "In the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. "[L]egislative intent is to be ascertained, in the first instance, from the plain meaning of the words used" by the Legislature. *W. Energy Co. v. Mont. Dep't of Revenue*, 1999 MT 289, ¶ 11, 297 Mont. 55, 990 P.2d 767.

7

¶13 Section 70-30-315, MCA, is entitled "Proration of taxes." Senate Bill 269, the 1981 eminent domain bill that created this section and the accompanying section regarding weed control, was entitled "An Act . . . Requiring Proration of Taxes and Weed Control." 1981 Mont. Laws 1105. Section 70-30-315, MCA, simply prorates property taxes. It prorates taxes "for the land being taken" as between the condemnor and the condemnee by designating the date from which the taxes will be assessed to the condemnor, which is "the date of possession or summons, whichever occurs first." Thus, the Legislature has hereby adopted a different assessment date than the usual "General assessment day" for real property—which is midnight, January 1—as provided in § 15-8-201(2)(a), MCA. Section 15-8-201(2)(a), MCA, requires the Department to annually "assess property to[] the person by whom it was owned or claimed or in whose possession or control it was" on midnight of January 1 of each year. In contrast, § 70-30-315, MCA, selects a different date for purposes of designating the person who shall be assessed the property taxes in condemnation situations, requiring the condemnor to be assessed earlier in time than the general tax statutes would normally require, thus effectuating a unique proration of taxes as between condemnation parties.

¶14 This conclusion is further illustrated by noting that the Legislature, when enacting § 70-30-315, MCA, did not address the Department's assessment practices, including the Realty Transfer Act, which had previously been enacted in 1975, or the mechanics of payment, protest, grievance, refund, or reimbursement of property taxes, as provided in Article VIII, Section 7 of the Montana Constitution ("The [L]egislature shall provide

8

independent appeal procedures for taxpayer grievances about appraisals, assessments, equalization, and taxes."), § 15-15-101, et seq., MCA (property tax appeals generally), and § 15-1-401, et seq., MCA (payment of taxes under protest). The Legislature did not here concern itself with the reality that the typical condemnor is a government entity that is exempt from paying property taxes, including the state, counties, cities, towns, and municipal corporations. *See* § 15-6-201(1)(a), MCA. The statute simply established a tax proration date that is more favorable to condemnees than under general law, and provided no additional or alternate process to accompany this simple adjustment.

¶15 "It is the general rule that a taking does not occur until: (1) legal title vests in the condemnor, (2) the condemnor enters into actual possession, or (3) the condemnor takes constructive possession either by causing damage to property or by depriving the owner of full beneficial use of his land." *City of Billings v. Hunt*, 257 Mont. 99, 103, 847 P. 2d 715, 717–18 (1993) (citing *Stewart & Grindle, Inc. v. Alaska*, 524 P.2d 1242, 1246 (Alaska 1974)). Until a taking by one of these methods occurs, the property's owner "remains responsible for expenses incidental to legal ownership." *City of Billings*, 257 Mont. at 103, 847 P.2d at 718. Expenses incidental to legal ownership include property taxes.

¶16 American Jurisprudence 2d provides commentary as follows:

> The Model Eminent Domain Code provides that the condemnor is required to pay or reimburse the owner for the prorated portion of property taxes allocable to a period after the date of vesting title in, or the effective date of possession of the property by, the condemnor, whichever is earlier.

26 Am. Jur. 2d Eminent Domain § 277 (2014) (citing Model Eminent Domain Code § 211(a)(3)). The Montana Legislature has provided condemnees a potentially "better

deal" on property taxes than contemplated by the Model Eminent Domain Code. Instead of prorating taxes as of the time of possession or the vesting of property title in the condemnor, whichever is earlier, the Legislature, by enacting § 70-30-315, MCA, required that "property taxes become the responsibility of the condemnor," *City of Billings*, 257 Mont. at 103, 847 P.2d at 718, at the time of possession or service of the condemnation summons, whichever is earlier. While the statute may shift to the condemnor responsibility for an "incident of ownership"—property tax—that accrues prior to the condemnor's taking of the property, it did nothing to alter the principle, as stated by the above authorities, that the obligation to *pay* the taxes does not transfer to the condemnor until the taking actually occurs. The owner "remains responsible" until then. *City of Billings*, 257 Mont. at 103, 847 P.2d at 718. As the City's counsel correctly explained in pre-litigation correspondence, § 70-30-315, MCA, "provides a measure for taxes to be assessed *for property actually taken. Once taken*, taxes are assessed to the condemnor 'as of the date of possession or summons, whichever occurs first.'" (Emphasis added.) Likewise, Mountain Water's complaint acknowledged that "*if Missoula takes possession of the subject properties by eminent domain*, then Mountain Water is entitled to an Order directing refund of the property taxes paid by Mountain Water under protest." (Emphasis added.) Thus, Mountain Water retains responsibility for actual payment of the property taxes for the period it possesses the property, until the taking occurs. This makes common sense: if a condemnation action is ultimately unsuccessful and the owner does not lose possession of the property, then the property tax obligation, along with the use and

enjoyment of the property, would have rightly remained with the owner during the litigation.

¶17 This understanding of § 70-30-315, MCA, and Mountain Water's continuing possession of the property pending a final order of condemnation, resolves the Department's current concern that it cannot "ceas[e] to assess Mountain Water on property it still owns." Mountain Water continues to own and possess the property and to be responsible for the taxes until the transfer of title by entry of a final order, consistent with the Realty Transfer Act. However, as the discussion of Montana law herein illustrates, a taking can also be effectuated by a condemnor's *possession* of property prior to the entry of a final order, *City of Billings*, 257 Mont. at 103, 847 P. 2d at 717-18, which could trigger a condemnor's obligation under § 70-30-315, MCA, to pay the property taxes. In that event, the Department would need to accommodate such a taking by assessing the property taxes, from the date of possession or summons, against the condemnor. *See* § 15-8-201(2)(a), MCA ("The department shall assess property to[] the person . . . in whose possession or control it was . . . .").

¶18 Here, Mountain Water continues to possess the property and thus continues to be responsible for payment of property taxes. It is not entitled to a refund at this time. The District Court's order of a refund to Mountain Water, and of assessment of property taxes against the City of Missoula, is reversed. The condemnation litigation will continue until a final order of condemnation is entered, effectuating a taking of the property by the City. Mountain Water may pursue appropriate remedies for refund, reimbursement or

11

compensation for the taxes it has paid since the date of the condemnation summons in the appropriate forums. Likewise, as Mountain Water acknowledges, the City retains all rights and avenues of relief to raise its defenses in appropriate forums as an entity claiming exemption from the payment of taxes, as well as its claim that any refund would constitute a windfall under the terms of Mountain Water's regulatory authorization, thus ensuring the City's right to due process. We resolve today only the question before us—the interpretation and application of § 70-30-315, MCA.

¶19    Reversed.


                              /S/ JIM RICE


We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR