FILED

08/06/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0619

DA 23-0619

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2024 MT 168

SUSAN JOHNSON, DAVE JOHNSON,
KATHY RICH, SUSAN HINKINS,
RICHARD GILLETTE, LINDA FULLER,
LARRY JENT, JULIE JENT,
RICHARD J. CHARRON, KRISTIN CHARRON,

      Plaintiffs and Appellees,

    v.

CITY OF BOZEMAN,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV-22-1006C
Honorable Andrew Breuner, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

         Elizabeth W. Lund, Berg Lilly, PC, Bozeman, Montana

      For Appellees:

         James H. Goetz, Henry J.K. Tesar, Goetz, Geddes & Gardner, P.C.,
Bozeman, Montana

         Brian K. Gallik, Gallik & Bremer, P.C., Bozeman, Montana

                           Submitted on Briefs:  May 29, 2024

                                 Decided:  August 6, 2024

Filed:

                _____
                          Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1      The City of Bozeman (City) appeals from the September 26, 2023 Judgment entered by the Eighteenth Judicial District Court, Gallatin County, upon the court's order granting summary judgment, which declared a zoning provision within the City's Unified Development Code (UDC) void *ab initio* upon a challenge by ten Bozeman residents (Plaintiffs), who claimed they were not given sufficient notice regarding the City's consideration of amendment of the provision.  The amendment was part of a general replacement of the UDC adopted in 2018.  The City contends, as it did at the District Court, that Plaintiffs claims are time-barred.

¶2      We restate the question presented as follows:

> *Whether the District Court erred by determining that Plaintiffs' claims against the City were not time-barred under § 2-3-114(1), MCA.*

We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3      The City is an incorporated municipality with a charter form of government.  The City Commission is tasked with approving and implementing zoning regulations for the City.  The City adopted the UDC in 2004.  In subsequent years, general zoning standards and practices changed, and the UDC became outdated, leading to an increasing number of variance requests and incremental revisions to the UDC by the City.

¶4      Consequently, the City Commission undertook consideration of a broad "UDC Replacement" in 2017.  The City published a Notice of Public Work Session regarding the UDC in the Bozeman Daily Chronicle for seven days in late January 2017.  On May 8,

2017, the City published a Notice in the Bozeman Daily Chronicle that discussed the reorganization of Chapter 38 of the Municipal Code—the UDC—and provided times and dates for public work sessions designed to receive public comments on proposed UDC updates and promote discussion about needed changes. This Notice specified that amendments were being made to "Zoning districts and land use" provisions, as well as to the definitions to be used with the UDC. The Notice also provided instructions for accessing the complete text of proposed changes and a contact for making inquiries.

¶5 Pursuant thereto, the City Commission held a public meeting in May 2017 and provided public access to a meeting agenda that included comparison tables of existing UDC provisions and proposed revisions. The City presented a "Deep Dive" public slide show of the scope of the proposal. Thereafter, the City Commission made the entire "Draft UDC Replacement" publicly available online and provided physical copies at different locations, such as City Hall and the Bozeman Public Library. Included therein was a summary of the narrative of the Draft UDC Replacement in Table 38.310.030A, with a section titled "Group Residential," which compared provisions of the proposed Replacement UDC with the current UDC provisions. Indicated thereon, fraternities and sororities were prohibited uses within certain residential zones under the current UDC, while the proposed Replacement UDC merged the category of "fraternity, sorority, or lodge" group residences into a new "group living" category, under which "Greek" housing was permissible ("Greek housing reclassification"). This indication was located on page 188 of the document containing the proposed UDC Replacement, which totaled about 500

pages. Further specific mention of this particular proposed change to the UDC was not given through the remaining process.

¶6 On May 21, 2017, the City published a Notice that stated:

> The city is reorganizing and updating its unified development code (UDC). It is proposed to generally revise Chapter 38 of the Bozeman Municipal Code (BMC). Chapter 38 governs the division, development and use of land within the city limits and lands proposed for annexation to the city. These work sessions are the result of the ongoing UDC Replacement project.

On June 25, 2017, a similar Notice was published in the Bozeman Daily Chronicle that included an announcement of a Joint City Planning Board and Zoning Commission meeting to take place on July 11, 2017. After this meeting, the City published Notices on July 30, 2017, and August 6, 2017, which announced a work session before the City Commission on the Draft UDC Replacement on August 17, 2017. A further public hearing to take place in August was also announced, but this hearing was postponed and later included within regularly scheduled City Commission meetings, for which notice was provided in the publicly available meeting agendas, held over the next few months. For several meetings, beginning in December 2017, the City Commission agenda packet included a "strikeout and underline" version of the Draft UDC Replacement that had been prepared in July. Overall, as the City notes, there were "dozens" of public meetings conducted by the City about the proposed UDC Replacement. On December 18, 2017, the City Commission held another meeting to discuss land use and public comments that had been received regarding land use. At that time, the City Commission provisionally adopted "Ordinance 1978," which contained the UDC Replacement with its extensive revisions,

including the Greek housing reclassification. On January 4, 2018, the City Commission took final action to pass, adopt, and approve Ordinance 1978, which set an effective date for the revised UDC of March 31, 2018.

¶7 In early 2022, Plaintiffs, a group of residents in a neighborhood that lies east of the main campus of Montana State University, began hearing raucous music emanating from a nearby single-family residence. Plaintiffs reported that loud parties and disturbances at this location began in March 2022. While the neighborhood had historically included occupancy by college students in group arrangements, as well as several pre-existing sorority houses, it had remained relatively quiet and peaceful. The house in question appeared to be occupied by several male college students who were part of a fraternity. Neighbors began meeting to discuss the problem near the end of March 2022, and in early April 2022, a neighbor contacted the City to inquire whether new fraternities and sororities were allowed in the neighborhood, and whether such housing was considered "group living" permitted under the then four-year-old UDC. Plaintiffs had been under the impression that new Greek housing was not permitted. However, in an April 7, 2022 responsive email, the City explained that under the UDC as replaced in 2018, Greek housing had been reclassified into the category of "group residential," presumably meaning "group living"—a term defined in the UDC. These types of residences were not prohibited in the neighborhood. The email was distributed to several Plaintiffs.

¶8 Over six months later, on October 21, 2022, Plaintiffs filed a Complaint asserting, as relevant here, claims against the City: Count I, nuisance/aiding and abetting nuisance;

5

Count II, failure to inform public of proposed zoning changes; Count III, failure to enforce zoning regulations; and Count IV, arbitrary and capricious actions by the City regarding zoning regulations.[1]  Plaintiffs moved for partial summary judgment on their claims, arguing that notice of the Greek housing reclassification created by Ordinance 1978 was legally insufficient, that the change was arbitrary and capricious, and that the City had failed to consider the "*Lowe* factors" in altering the previous classification for Greek housing.[2]  The City cross-moved for summary judgment, arguing Plaintiffs' claims were time-barred under the statute of limitation set forth in § 2-3-114(1), MCA.

¶9      The District Court concluded that the Plaintiffs' "complaint is time-barred to the extent it seeks to set-aside the [Greek housing reclassification] because their complaint was filed, by any measure, outside the 30-day limitations period" of § 2-3-114(1), MCA. However, citing § 76-2-303(2), MCA, which states that a "regulation, restriction, or boundary *may not become effective* until after a public hearing in relation to the regulation, restriction, or boundary at which parties in interest have an opportunity to be heard," the District Court held that (1) while notice of the replacement of the UDC was extensive

---

[1] Count I also named the allegedly involved fraternity, Alpha Sigma Phi (Montana State Chapter), and John Pine, the owner of the subject leased property.  After the vacating the house, the District Court entered an Order to Stay as to Counts against the fraternity.  Pine filed a motion to dismiss the Count, contending that he was not liable for the tortious acts of his tenants, which the District Court granted.  Because Counts I and III both related to the fraternity's conduct and the City's response to that conduct, we agree with the City's position that only Counts II and IV are properly before us here.

[2] *Lowe v. Missoula*, 165 Mont. 38, 40-41, 525 P. 2d 551, 552-53 (1974) (identifying statutory factors to be considered in a zoning change).

overall ("the City undertook the adoption of Ordinance 1978 in a purposeful, coordinated and professionally-informed manner"), the City provided insufficient specific notice about the Greek housing reclassification, reasoning that notice "must embrace, to some degree, the nature of the proposed change and how it will impact the community"; (2) therefore, by § 76-2-303(2), MCA, the Greek housing reclassification was rendered void *ab initio*; and (3) the statute of limitations provided in § 2-3-114(1), MCA, was inapplicable because it applied only to actions "to set aside" an ordinance, but if the ordinance was void *ab initio*, the court could not "set-aside a provision that never was."  Having concluded the challenge was not time barred, the District Court granted Plaintiffs' motion for partial summary judgment, voided Ordinance 1978's Greek housing reclassification, and reinstated the pre-2018 zoning Greek housing provision.  It determined that the remainder of the 2018 UDC revisions would remain unaffected by its ruling.

¶10    The City appeals.

## STANDARD OF REVIEW

¶11    "We review a district court's grant of summary judgment de novo."  *Schutter v. State Bd. of Land Comm'rs*, 2024 MT 88, ¶ 7, 416 Mont. 305, 547 P.3d 1250.  Summary judgment is only appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  M. R. Civ. P. 56(c)(3).

**DISCUSSION**

¶12 *Whether the District Court erred by determining that Plaintiffs' claims against the City were not time-barred under § 2-3-114(1), MCA.*

¶13 In its challenge to the District Court's rationale, the City argues that the notices it provided regarding the UDC Replacement not only satisfied the "time and place" notice hearing requirements for ordinances under § 76-2-303(2), MCA, but "went further by identifying the types of changes proposed and specifying that changes would affect land use and development within the City, including permitted uses in residential zones." The City argues that it not only provided "ample information about the categories of proposed changes" within the broad UDC replacement, but also "specifically highlighted the fraternity/sorority change." It argues the District Court's reasoning that the City should have also included notice about "how [the Greek housing reclassification] will impact the community" goes beyond any notice requirement in statute or case law, and would create "unwieldy and functionally impossible" requirements for cities to satisfy when enacting general zoning revisions. Premised upon its contention that it provided sufficient notice, the City argues the District Court should have applied § 2-3-114(1), MCA, and held that Plaintiffs were required to file their claims within 30 days after the enactment of Ordinance 1978, but that, "[e]ven if the Court determines this notice was insufficient and the Plaintiffs are afforded the benefit of waiting until actual notice of the UDC Replacement years later, the undisputed facts establish that they waited more than 30 days after these events leading to their actual knowledge to file their lawsuit." Plaintiffs offer support for the District Court's rationale, particularly arguing that, while the City provided notice of the UDC

8

overhaul at large, there was insufficient notification specifically "in relation to the regulation" at issue.

¶14 Section 2-3-114(1), MCA, is codified within the Code Chapter titled "Public Participation in Governmental Operations," which states the legislative intent of the Chapter is to provide guidance "to secure to the people of Montana their constitutional right to be afforded reasonable opportunity to participate in the operation of governmental agencies," as provided in Article II, Section 8, of the Montana Constitution. Section 2-3-101, MCA; *see also Citizens for a Better Flathead v. Bd. of County Comm'rs*, 2016 MT 256, ¶ 40, 385 Mont. 156, 381 P.3d 555 (holding in a challenge to a revision to a county growth policy that "[t]he Legislature implemented these constitutional rights by enacting §§ 2-3-101 to-221, MCA."). "Agency" is defined to include an "officer of the state or local government authorized by law to make rules," including "the amendment or repeal of prior rule." Section 2-3-102(1), (3), MCA. Section 2-3-114(1), MCA, of the Chapter states:

> The district courts of the state have jurisdiction to set aside an agency decision under this part upon petition of any person whose rights have been prejudiced. A petition pursuant to this section must be filed within 30 days of the date on which the person learns, or reasonably should have learned, of the agency's decision.

¶15 Citing this provision, we have held that "[c]ourts may void agency decisions" made in violation of the provisions of the Chapter. *Citizens for a Better Flathead*, ¶ 41. In contrast, the District Court, without citation to authority, distinguished the voiding of an ordinance *ab initio* for lack of proper notice from the "setting aside" of an ordinance, as

9

provided in the statute, and, essentially, from the holding of *Citizens for a Better Flathead*, ¶ 41, that courts "may void" ordinances pursuant to the statute, to conclude that § 2-3-114(1), MCA, did not ultimately apply at all, and thus the 30-day statutory period did not control in this case. However, we believe the District Court misinterpreted the statute because the distinction it made is not founded upon the statute's text. If an ordinance can be declared void *ab initio* for insufficient notice such that § 2-3-114(1), MCA, is inapplicable, the legislative enactment of the statute and its limitation period are essentially negated.

¶16 Instead, as written, § 2-3-114(1), MCA, contemplates claims for lack of notice by running the limitation period, not from the date the ordinance was enacted, but from "the date on which the person learns, or reasonably should have learned, of the agency's decision." Consequently, if a party failed to receive notice of an agency's rule revision, or here, a rule replacement, the limitation period for filing an action to challenge the revision as unlawful does not begin to run until he or she does receive notice, or reasonably should have known of the revision. The limitation period for filing an action to challenge the revision does not begin to run until he or she receives notice, or reasonably should have known of the revision. Section 2-3-114(1), MCA. The statute thus accommodates time that is lost due to lack of notice. In this case, Ordinance 1978 was implemented by the City Commission almost four years before the Plaintiffs learned about it. However, that lapse of time did not prejudice the Plaintiffs. Rather, under § 2-3-114(1), MCA, the commencement of the limitation period was essentially tolled until Plaintiffs did receive

10

notice of the Greek housing reclassification, or they reasonably should have known about it. At that point, they were entitled to file an action raising their claims, including that under § 76-2-303(2), MCA, the Greek housing reclassification "[did] not become effective" because of a lack of a "public hearing in relation to the regulation, restriction, or boundary at which parties in interest have an opportunity to be heard."

¶17 Accepting the record and the parties' agreement that Plaintiffs first became actually aware of the Greek housing reclassification in April 2022, when the City explained to them the enactment of the UDC Reclassification in an email, which is the latest possible notification date under the statute, the 30-day limitation period began to run at that time and expired in May 2022. However, Plaintiffs did not file their suit until October 2022, some five months later, rendering their action untimely. While factual disputes could arise in different cases about when a plaintiff "reasonably should have known" about an ordinance revision, we need not address those other scenarios here. The City argues that Plaintiffs reasonably should have known about Ordinance 1978, especially given the extensive public notice, when it was enacted in January 2018. However, it is unnecessary in this case to undertake consideration of a rule that would establish as a matter of law that persons reasonably should have known about an ordinance's enactment at a particular procedural benchmark, and differing facts could render such a rule elusive.

¶18 Plaintiffs offer out-of-state cases as persuasive authority in support of the District Court's void *ab initio* ruling, but those cases are based upon differing state statutes and are distinguishable factually. In one such case, *Schadler v. Zoning Hearing Board*, 850 A.2d

11

619 (Pa. 2004), the Supreme Court of Pennsylvania considered a challenge filed after the expiration of a statutory limitation period, which, unlike here, required procedural challenges to the validity of a land use ordinance to be filed within 30 days of the ordinance's *effective date. Schadler,* 850 A.2d at 621. Contrary to the mandated enactment process, the zoning board had failed to publish newspaper notices of the ordinance's text before making the revision, and failed to record the revision in the township ordinance book, but the statute of limitations did not accommodate a lack of knowledge about the ordinance. *Schadler*, 850 A.2d at 625. The Pennsylvania Supreme Court reasoned that the "egregious procedural defects" had failed to provide notice to the public and, citing an earlier case, held that an unrecorded ordinance "had no effective date" and was thus void *ab initio. Schadler*, 850 A.2d at 624-26. However, such a failure of enactment did not occur in the case *sub judice* and, unlike the statute of limitation at issue in *Schadler*, § 2-3-114(1), MCA, as explained herein, accommodates lack of knowledge about the enactment.[3]

¶19    Plaintiffs also offer that the five-year default statute of limitations in § 27-2-231, MCA, should apply because Title 76—"Land Resources and Use"—governs zoning requirements but provides no statute of limitations for "municipal zoning." However, this argument fails to account for the above-quoted language of § 2-3-114(1), MCA, which is facially applicable to the actions of the local government here. It also fails to account for

[3] The *Schadler* Court also noted that, "[w]hile we may someday be presented with a case in which a procedurally defective ordinance has been 'on the books' and obeyed in practice for such a long time that public notice and acquiescence can be presumed, this is not such a case." *Schadler*, 850 A.2d at 627.

this Court's utilization of the statute in a case challenging revision of a county growth policy on grounds of adequate public participation. *See Citizens for a Better Flathead*, ¶ 40; *see also Schoof v. Nesbit*, 2014 MT 6, ¶¶ 27-30, 373 Mont. 226, 316 P.3d 831. The District Court likewise reasoned the statute itself was the applicable statute of limitation for Plaintiffs' claims.

¶20   Statutes of limitations generally "commence to run when the cause accrues or, at latest, on date of discovery of facts which would give rise to cause of action." *Knight v. Missoula*, 252 Mont. 232, 238, 827 P.2d 1270, 1273 (1992). We acknowledge the 30-day timeframe after notice provided by § 2-3-114(1), MCA, is a short period within which to commence a legal action, although other states utilize similarly short periods for this purpose. *See Schadler,* 850 A.2d at 621. The City offers policy reasons in favor of this short timeframe. For our purposes, the statute is not otherwise challenged here as invalid, and thus the issue of what constitutes a judicious limitation period remains a legislative prerogative.

¶21   Reversed and remanded for entry of judgment in favor of the City.

/S/ JIM RICE

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON

13