No. 15,003.

MOFFAT TUNNEL IMPROVEMENT DISTRICT *v.* HOUSING AUTHORITY OF THE CITY AND COUNTY OF DENVER ET AL.
(125 P. [2d] 138)

Decided April 20, 1942.

Mr. ERSKINE R. MYER, for plaintiff in error.

Mr. FRANK L. HAYS, Mr. PHILIP HORNBEIN, Mr. PHILIP HORNBEIN, JR., for defendants in error.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

THESE parties appeared in reverse order in the trial court and are hereinafter referred to as there, or as the District and the Housing Authority, respectively. Aside from the Housing Authority, approximately forty parties (including Greenspoon and Rashburn) and "unknown owners" were named as defendants. Both the District and the Housing Authority are municipal corporations.

This was an action in condemnation brought to obtain title to sixteen lots in block 5 West Fairview, in Denver. The District demurred for want of jurisdiction and answered, pleading perpetual tax liens superior to all titles, vested or obtainable. The cause proceeded regularly. The objections of the District were overruled, a jury fixed the value of the lots at $5500, that sum was deposited in court and findings for the Housing Authority were announced March 24, 1941, directing that any lien the District might have on the lots be transferred to the fund. Thereupon a stipulation, covering some fifteen typewritten pages, was filed containing the statement "that the real property owned by the City and County of Denver, school districts, and other municipal corporations and used for public purposes within the Moffat Tunnel District, is not and never has been assessed for Moffat Tunnel improvement taxes." The District then moved that a lien on the fund in its favor be established. April 21, that motion was denied; the court found Greenspoon and Rashburn to have been the owners of the property and entitled to the fund, and entered judgment accordingly, awarding the Housing Authority possession of and fee title to said lots. To review that judgment this writ is prosecuted and we are asked to order that it operate as a supersedeas. On that motion we elected to finally dispose of the cause and it was accordingly submitted.

Briefly stated the assignments present: (1) The jurisdiction of the trial court; (2) The validity of the order releasing the lien of the District on the lots and trans-

ferring it to the fund; (3) Lien or no lien of the District on the fund; (4) The question of just compensation.

The District was organized under sections 200 to 220, chapter 138, of '35 C.S.A., the organization approved in *Milheim v. Moffat Tunnel District,* 72 Colo. 268, 211 Pac. 649, and its status, powers and limitations examined and adjudicated in *Denver Land Co. v. Moffat Tunnel District,* 87 Colo. 1, 284 Pac. 339, and *Boynton v. Moffat Tunnel District,* 57 Fed. (2d) 772. The Housing Authority was organized under chapter 82 of '35 C.S.A. and its status, powers and limitations examined and adjudicated in *People ex rel. v. Newton,* 106 Colo. 61, 101 Pac. (2d) 21. For a better understanding of the character and objects of said corporation those statutes and decisions should be read in connection herewith. We avoid unnecessary repetition and quotation.

The lots here in question were included in the Moffat Tunnel District and were subject to levy and tax for the purposes for which it was created. This property having become necessary to the Housing Authority to effectuate the purposes for which it was created it resorted to condemnation. If so taken and thus freed of the special levies of the District the security for the latter's large outstanding indebtedness would be reduced to that extent; hence the controversy here arising and the questions here presented. It should be added that all past assessments of the District on said lots have been paid so that only future installments are here involved, and the fund on deposit is ample to cover these should the District be held entitled thereto.

■■■ 1. The contention that the court was without jurisdiction rests largely upon the decree in the Boynton case, supra, and particularly that portion of it reserving jurisdiction for the purpose of effectuating it and protecting the rights therein adjudicated. If that contention is good then every dispute and every action of whatsoever character touching the District and the property therein subject to its assessments which might

directly or indirectly affect in the remotest or most minute way under any conceivable theory the security for the indebtedness of the District would be forever barred and foreclosed to the state courts. Bearing in mind that the District is a creature of the state whose entire machinery is operated under state statutes and whose sole duties, powers and authority are fixed thereby, such conclusion is upon its face an absurdity. That conclusion, we think, is disposed of by the federal opinion itself wherein, discussing an alleged conflict in jurisdiction between the federal court and a state court in which a certain action was then pending, it is said— "The state court suit is an ordinary taxpayers suit to relieve its property from a threatened tax lien; the issue in this suit is to recover on bonds, with no reference to what particular piece of property is assessed therefor." Again—"The conflict of jurisdictions which is here asserted cannot stand upon the relief sought by the pleadings in the two courts, because the pleadings do not concern the same res; the state court suit is one to remove a cloud from real estate; in the federal court suit, the res is the fund." So here the action involves particular pieces of property and the decree removes a cloud from the title thereon. It may properly be added that considering the indebtedness of the District, running into millions, the amount here involved is infinitesimal and the record discloses no reason to believe that any other rights probably dependent upon this decision will be relatively greater. It is also said that the court had no jurisdiction because no bondholder was made a party. We think that position disposed of by the following. *Denver v. Highlander Boy Foundation,* 102 Colo. 365, 79 P. (2d) 361; *Burton v. Denver,* 99 Colo. 207, 61 P. (2d) 856, 107 A.L.R. 564; *Denver v. Bach,* 92 Colo. 594, 22 P. (2d) 1114.

■■■ 2. If the condemnation stands, and it must, it is clear that the lien of the District, if any, should be transferred to the fund, not continued against the lots.

*Board of Capitol Managers v. Brasie,* 72 Colo. 153, 210 Pac. 63, 79 A.L.R. 117. Moreover, that transfer would be a benefit to the District, not an injury, and in no event could it complain.

■ 3. By statute all property of governmental agencies within the District is "exempt from assessment and levy by the board." '35 C.S.A., c. 138, §211. By a like enactment all property of the Housing Authority is exempt "from the payment of any taxes" and "from all local and municipal taxes." '35 C.S.A., c. 82, §56; S.L. '37, c. 172, §5. Nevertheless it is contended that title to property acquired by the Housing Authority since the Moffat Tunnel levies of 1925, 1926 and 1927, passed burdened with those and all future assessments. Under Denver charter provisions special improvement taxes become valid liens from the effective date of the pertinent ordinance. But as it appears from said stipulation, the District collects its assessments annually under section 212, chapter 138, '35 C.S.A., and these are levied upon an ad valorem, not a benefit, basis. It follows that property taken over by a tax exempt corporation, prior to such levy, ceases to be subject thereto. *Denver v. Tax Research Bureau,* 101 Colo. 140, 71 P. (2d) 809.

■ 4. That the taking of these lots by the Housing Authority and releasing them from the liens of the District's tax claims is no violation of the Fifth Amendment to the federal Constitution, or section 15, article II of the state Constitution is, in the light of the foregoing, self-evident. The right to tax property held by municipal corporations was denied the District from its organization. Hence as to property thereof passing from private ownership to such corporations, following the method of assessment and levy followed by the District, that corporation and all purchasers of its evidences of indebtedness were advised, prior to the time their interests were initiated, that those interests terminated

with the transfer. Hence the property which it is said was here taken from them without compensation was a right to tax which the law never gave them.

The judgment is affirmed.