FILED

08/04/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0262

DA 19-0262

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 194

MOUNTAIN WATER COMPANY,

Plaintiff and Appellant,

v.

MONTANA DEPARTMENT OF REVENUE,

Defendant and Appellee,

and

CITY OF MISSOULA, a Montana municipal corporation,

Intervenor, Appellee and Cross-Appellant,

and

MISSOULA COUNTY,

Intervenor, Appellee and Cross-Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
                In and For the County of Missoula, Cause No. DV-18-47
                Honorable Leslie Halligan, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Dale Schowengerdt, Michael W. Green, D. Wiley Barker, Crowley Fleck
                PLLP, Helena, Montana

        For Appellee:

                Daniel J. Whyte, David Burleigh, Special Assistant Attorneys General,
                Montana Department of Revenue, Legal Services Office, Helena, Montana

For Intervenor and Appellee City of Missoula:

Scott M. Stearns, Natasha Prinzing Jones, Randy J. Tanner, Boone Karlberg P.C., Missoula, Montana

For Intervenor and Appellee Missoula County:

Matt Jennings, Deputy County Attorney, Kirsten H. Pabst, Missoula County Attorney, Missoula, Montana

Submitted on Briefs: March 18, 2020

Decided: August 4, 2020

Filed:

_____
Clerk

Justice Dirk Sandefur delivered the Opinion of the Court.

¶1 Mountain Water Company (Mountain Water) appeals the summary judgment of the Fourth Judicial District Court, Missoula County, ruling that the equitable doctrine of unjust enrichment precludes its claim under § 70-30-315, MCA, for a general property tax refund pursuant to §§ 15-1-402(1)-(2), (6)(b)(i), and -406(1)-(3), MCA, on taxes that accrued during the pendency of the condemnation action initiated by the City of Missoula (City) to take the subject property for public use pursuant to Title 70, chapter 30, MCA. The City and Missoula County (County) separately cross-appeal the court's related ruling that § 70-30-315, MCA, would entitle Mountain Water to a general property tax refund but for application of the equitable doctrine of unjust enrichment. The City further cross-appeals the court's additional ruling that Mountain Water did not breach the parties' 2017 settlement agreement by asserting its subsequent property tax refund claim.[1] We address the following restated issues:

> *1. Whether the District Court erroneously concluded that the equitable doctrine of unjust enrichment precluded relief on Mountain Water's claim for property tax proration and relief under § 70-30-315, MCA?*
>
> *2. Whether the District Court erroneously concluded as a threshold matter that § 70-30-315, MCA, would entitle Mountain Water to a general property tax refund under §§ 15-1-402(1)-(2), (6)(b)(i), and -406(1)-(3), MCA?*
>
> *3. Whether Mountain Water contractually waived its right to property tax proration and reimbursement from the City pursuant to § 70-30-315, MCA?*

---

[1] The City also cross-appeals the court's failure to address its as-applied constitutional challenge to § 70-30-315, MCA. However, we decline to unnecessarily address this contention in light of our holdings obviating it on non-constitutional grounds.

*4. Whether the District Court erroneously concluded that Mountain Water's subsequent assertion of a general property tax refund claim did not breach the parties' 2017 condemnation action settlement agreement?*

We affirm the ultimate result reached by the District Court but on different grounds.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 This is the most recent in the multitude of appeals and petitions spawned by the City's latest attempt to take Mountain Water's water distribution system for public use by eminent domain.[2] Eminent domain is the power to affirmatively take private property for public use upon just compensation in the manner prescribed by Title 70, chapter 30, MCA. Section 70-30-101, MCA. *See also* Mont. Const. art. II, § 29. The taking of private property by eminent domain is a two phase process—a determination of whether the condemnor can show the requisite public need for the taking and a compensation phase for the determination and payment of various statutory elements of compensation due to the property owner in return for the taking. *See* §§ 70-30-206 through -309, MCA.

¶3 Mountain Water is a private Montana corporation previously owned through various layered holding companies by Carlyle Infrastructure Partners, LP (Carlyle), a

---

[2] The City was previously unsuccessful in establishing the requisite public need for eminent domain in 1986, see *City of Missoula v. Mountain Water Co.* (*Mountain Water I*), 228 Mont. 404, 743 P.2d 590 (1987), and again in 1987-88, see *City of Missoula v. Mountain Water Co.* (*Mountain Water II*), 236 Mont. 442, 445, 771 P.2d 103, 105 (1989). In addition to the appeals referenced herein, see also, *e.g.*, *City of Missoula v. Mountain Water Co. (Mountain Water V)*, 2018 MT 114, 391 Mont. 288, 417 P.3d 321; *City of Missoula v. Mountain Water Co.* (*Mountain Water VI*), 2018 MT 139, 391 Mont. 422, 419 P.3d 685; *City of Missoula v. Mountain Water Co.* (*Mountain Water VII*), 2018 MT 245, 393 Mont. 68, 427 P.3d 1018.

4

Delaware-chartered company.[3]  As a regulated public water utility, Mountain Water provided drinking water to Missoula area customers from an underground aquifer in the extraordinary absence of a publicly-owned water system.[4]  On April 2, 2014, in the wake of Mountain Water's rejection of a City offer to buy the utility for $50 million, the City commenced another action to acquire it by eminent domain.

¶4      Later that month, in a letter to the Montana Department of Revenue (MDOR) and the County, Mountain Water asserted pursuant to § 70-30-315, MCA (required property tax proration between condemnee and condemnor), that it was "no longer liable" for taxes on the property because the City was now responsible for them as a result of its institution of the condemnation action.  Mountain Water accordingly asserted that it and the City were each responsible to pay 50% of the first half taxes for 2014, due November 30th of that year, and that the City was thereafter exclusively responsible for all taxes due on the property during the pendency of the condemnation action.  Mountain Water thus requested that MDOR immediately initiate the "process for assessing the City for the property taxes [thereafter] due" on the property.  The City contrarily asserted to MDOR that the property tax proration required by § 70-30-315, MCA, would be not triggered until after a

_____

[3] Liberty Utilities Company (Liberty) acquired Carlyle's interest in Mountain Water prior to the parties' 2017 settlement agreement.

[4] The Montana Power Company originally owned and operated the Missoula water utility. Mountain Water acquired it from Montana Power in 1979 after the City was unable to timely secure sufficient financing for the purchase. *Mountain Water I*, 228 Mont. at 407, 743 P.2d at 592. The City's efforts to acquire it from Mountain Water by purchase or condemnation commenced immediately thereafter. *Mountain Water I*, 228 Mont. at 407, 743 P.2d at 592.

preliminary adjudication of the requisite public need for the taking under § 70-30-206(2), MCA. The City asserted that only then would the condemnation action proceed to the compensation phase and would the City become the "condemnor" of the property "being taken" as referenced in § 70-30-315, MCA.

¶5 In response, MDOR asserted that the language of § 70-30-315, MCA, was ambiguous, both on its face and upon resort to its limited legislative history. In the face of that ambiguity and the parties' conflicting statutory interpretations, MDOR asserted that Title 15, chapter 7, part 3, MCA (Montana Realty Transfer Act), specified the exclusive process by which MDOR must assess property taxes to a new owner on a change of ownership. MDOR thus asserted that it had no duty or authority to change the record owner of the property for tax assessment purposes prior to receipt of a statutorily-mandated "realty transfer certificate" upon an actual transfer of ownership. Beginning with the first half taxes for 2014, due November 30, 2014, Mountain Water thereafter paid all property taxes under protest pursuant to § 15-1-402(1)-(2), MCA, based on § 70-30-315, MCA.

¶6 On January 9, 2015, prior to a preliminary public necessity determination in the condemnation action, Mountain Water filed a separate claim for declaratory judgment and general property tax refund against MDOR in the Montana First Judicial District pursuant to §§ 15-1-402(6)(b)(i) and -406(1)-(3), MCA. The claim sought declaratory judgment that § 70-30-315, MCA, required MDOR to immediately retroactively reassess taxes on the property to the City (from the date of the condemnation action summons) and that

6

Mountain Water was thus entitled to a refund, with interest, of previously paid property taxes accruing thereafter.

¶7    On June 15, 2015, while the property tax action proceeded in the First Judicial District, the Fourth Judicial District Court issued a judgment in the condemnation action that the City had established the requisite public need for the taking pursuant to § 70-30-206(2), MCA, thus authorizing the condemnation action to proceed to the compensation phase.  Mountain Water appealed and we later affirmed the preliminary judgment of condemnation on August 2, 2016.  *City of Missoula v. Mountain Water Co.* (*Mountain Water III*), 2016 MT 183, 384 Mont. 193, 378 P.3d 1113.  On November 17, 2015, the condemnation commissioners determined in the condemnation action that the fair market value of the Mountain Water property was $88.6 million.  In April-May 2016, the Fourth Judicial District Court subsequently determined the amount of interest due on that valuation and further concluded that Mountain Water and Carlyle were both entitled to recover necessary litigation expenses under § 70-30-305(2), MCA.

¶8    On June 7, 2016, in the parallel-pending property tax case, the First Judicial District Court granted summary judgment that § 70-30-315, MCA, "requires . . . the City . . . [to] be assessed for all taxes accruing on the subject property after April 2, 2014," and that Mountain Water was thus entitled to a general property tax refund to date.  MDOR promptly appealed. On April 12, 2017, while the property tax appeal was still pending, the Fourth Judicial District Court issued a judgment in the condemnation action determining

7

the amount of attorney fees and condemnation litigation expenses due to Mountain Water and Carlyle under §§ 70-30-306 and -307, MCA.

¶9 A month later, on May 16, 2017, we reversed the June 7, 2016, judgment of the First Judicial District Court in the property tax case. *Mountain Water Co. v. Mont. Dep't of Revenue* (*Mountain Water IV*), 2017 MT 117, 387 Mont. 394, 394 P.3d 922. We held that Mountain Water's claim for property tax proration under § 70-30-315, MCA, was premature at that stage of the condemnation proceeding[5] and that it accordingly remained obligated to continue to pay the assessed taxes on the property through the date of title transfer under § 70-30-309, MCA. *Mountain Water IV*, ¶¶ 13-18.

¶10 On June 5, 2017, Mountain Water and the City executed a written settlement agreement in the condemnation case.[6] As pertinent here, the settlement agreement:

(1) specified that the City would pay Mountain Water the net sum of $83,863,336 "for all assets and claims asserted" in the condemnation case "other than [specified] Reserved Claims";

(2) "release[d] and discharge[d] the City . . . from any and all claims relating to the Condemnation Lawsuit . . . including, without limitation, any and all claims that were brought *or could have been brought* in [that] [l]awsuit";

(3) acknowledged and "agree[d] that Mountain Water reserve[d] [certain] rights and claims" but "settled and waived" "[a]ll other claims or appeals . . . not specifically reserved" in the agreement;

(4) mutually "waive[d] claims against [each] other . . . related to the payment of property taxes[,]" but "*reserve[d]* any claim, argument, and/or defense each

---

[5] At that time, the compensation commissioners had determined the amount of just compensation due but the final judgment of condemnation, and derivative final order of condemnation, had yet to issue pursuant to §§ 70-30-304 and -309, MCA, respectively.

[6] Liberty was also a party to the agreement after acquiring Carlyle's interest in Mountain Water.

may have *against . . . [MDOR] regarding property tax amounts* allegedly owed or refunds they claim entitlement to"; and

(5)   further acknowledged "and agree[d] that, pursuant to . . . [*Mountain Water IV*], Mountain Water intends to [continue to] timely pay under protest property taxes assessed and due through the Final Order of Condemnation and thereafter intends to seek refund, reimbursement, or compensation through all available means for any property taxes paid for periods after April 2, 2014."

(Emphasis added.)   Pursuant to § 70-30-304(2), MCA, and in accordance with the incorporated terms of the settlement agreement, the Fourth Judicial District Court entered a "Final Judgment In Condemnation" on June 15, 2017.  The Final Judgment specified the total amount due from the City, the agreed manner and method of payment, and the agreed "form and content" of a resulting "Final Order of Condemnation" under § 70-30-309, MCA.

¶11   On June 22, 2017, the parties appeared before the Fourth Judicial District Court at which time the City tendered full payment of the final judgment to Mountain Water and the court issued the stipulated Final Order of Condemnation.  As pertinent here, the Final Order specified that:

fee simple interest . . . [in the condemned property] shall vest in the City, free and clear of any rights, liens, or encumbrances . . . immediately upon the City filing . . . [of the Final Order] in the office of the Missoula County Clerk and Recorder . . . [and]

[*a*]*ll interests and claims* of [the] Condemnation Defendants in or *relating to* the [condemned property] *is terminated, and* title . . . and possession . . . *shall not be subject to*, or encumbered by, *any existing or future rights*, liens, *claims* or other encumbrances *including . . . taxes*[] *and assessments upon or against the* [*property*] *while owned or possessed by the Condemnation Defendants*.

9

(Emphasis added.) Upon subsequent filing of the Final Order and a related realty transfer certificate in the office of the Missoula County Clerk and Recorder pursuant to §§ 15-7-305 and 70-30-309(2), MCA, the City took possession of the property.

¶12 On August 14, 2017, Mountain Water filed a second claim for a general property tax refund against MDOR in the Montana First Judicial District Court pursuant to §§ 15-1-402(6)(b)(i) and -406(1)-(3), MCA. The claim again asserted that § 70-30-315, MCA, required MDOR to retroactively reassess property taxes on the property from Mountain Water to the City and that Mountain Water was thus entitled to a general property tax refund, with interest, (now approximately $5 million) for taxes paid during the pendency of the condemnation proceeding. After obtaining leave to intervene, the City and County obtained a change of venue to the Fourth Judicial District in Missoula County. On February 28, 2019, the District Court granted judgment in favor of the City and County against Mountain Water on the parties' cross-motions for summary judgment. The court concluded as a matter of law that § 70-30-315, MCA, entitled Mountain Water to the requested property tax refund but that the equitable doctrine of unjust enrichment precluded that statutory entitlement because Mountain Water had already passed-on the subject tax expense to its customers and would thus be unjustly enriched by a refund of already-recovered costs. Mountain Water timely appealed and the City and County separately cross-appealed.

10

**STANDARDS OF REVIEW**

¶13 We review grants or denials of summary judgment de novo for conformance to M. R. Civ. P. 56. *Borges v. Missoula Cty. Sheriff's Office*, 2018 MT 14, ¶ 16, 390 Mont. 161, 415 P.3d 976. Summary judgment is proper only when there is no genuine issue of material fact and the moving party "is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3). We review a district court's conclusions and applications of law de novo for correctness. *Borges*, ¶ 16.

**DISCUSSION**

¶14 *1. Whether the District Court erroneously concluded that the equitable doctrine of unjust enrichment precluded relief on Mountain Water's claim for property tax proration and relief under § 70-30-315, MCA?*

¶15 Under the modern view of equity, unjust enrichment is a predicate claim for equitable relief upon which courts may fashion corresponding equitable remedies, such as restitution or a constructive trust, to prevent the subject from unjustifiably gaining or retaining something of value, regardless of whether the claimant suffered a corresponding loss. *N. Cheyenne Tribe v. Roman Catholic Church ex rel. Great Falls/Billings Dioceses*, 2013 MT 24, ¶¶ 36-39, 368 Mont. 330, 296 P.3d 450; *Lawrence v. Clepper*, 263 Mont. 45, 53-54, 865 P.2d 1150, 1156 (1993) (citing 66 Am. Jur. 2d *Restitution and Implied Contracts* §§ 3-4 (1973)). *See also Volk v. Goeser*, 2016 MT 61, ¶ 53, 382 Mont. 382, 367 P.3d 378 ("court[s] sitting in equity [are] empowered to determine all questions involved in [a] case[] and to fashion an equitable result that will accomplish complete justice"); Restatement (Third) of Restitution and Unjust Enrichment § 1 cmt. a-e (Am. Law Inst.

2011) (characterizing unjust enrichment as unjustified enrichment and distinguishing restitution as a remedy for unjust enrichment rather than an independent theory of liability/recovery). The essential elements of an unjust enrichment claim are: (1) a benefit conferred by one on another; (2) the other's knowing acceptance of the benefit; and (3) circumstances rendering it inequitable for the recipient to retain the benefit. *Associated Mgmt. Servs., Inc. v. Ruff*, 2018 MT 182, ¶ 65, 392 Mont. 139, 424 P.3d 571; *N. Cheyenne Tribe*, ¶¶ 33 and 36. Unjust enrichment does not necessarily require proof of a wrongful act or conduct by the party unjustly enriched, only that the subject unjustifiably gained something of value to which that party is not equitably entitled under the circumstances. *Ruff*, ¶ 65; *Volk*, ¶¶ 45 and 50; *N. Cheyenne Tribe*, ¶ 37; *Lawrence*, 263 Mont. at 53, 865 P.2d at 1156.

¶16 However, in contrast to open-ended notions of morality or intuitive justice, the third element of equitable unjust enrichment more narrowly focuses on "enrichment that lacks an adequate legal basis," such as "the transfer of a benefit without adequate legal ground." Restatement (Third) of Restitution and Unjust Enrichment § 1 cmt. b. *See also Nelson v. Wilson*, 81 Mont. 560, 572-73, 264 P. 679, 683 (1928). *Accord Ruff*, ¶¶ 67-68 (licensee not unjustly enriched from use of another's intellectual property where the use was authorized by licensing agreement); *Flathead Health Ctr. v. Cty. of Flathead*, 183 Mont. 211, 218, 593 P.2d 1111, 1114-15 (1979) (unjust enrichment inapplicable where federal statutes and regulations authorized the benefit/enrichment). *Compare N. Cheyenne Tribe*, ¶¶ 39-40 and 60 (depending upon whether subject Indian Tribe had a shared claim of right,

12

private school foundation potentially unjustly enriched from otherwise lawful third-party fundraising focused on the plight of the Tribe); *Volk*, ¶¶ 47-48 (sister unjustly enriched from brother's otherwise lawful change of life insurance beneficiary to detriment of former spouse where policy was unreferenced in their marital settlement agreement and the change occurred in violation of statutory order restraining marital estate transactions).

¶17 While often available to ameliorate the harsh effects of law and to provide a remedy where a legal remedy is non-existent or inadequate, equity is not formless or boundless— it generally applies only in accordance with "its own fixed precedents and principles," which are "scarcely more elastic than those of law." *Nelson*, 81 Mont. at 572, 264 P. at 683. Moreover, "where rights are clearly established and defined by [affirmative] statut[ory provision], equity [generally] has no power to change or upset such rights." *Cloeter v. Superior Court*, 347 P.2d 33, 34-35 (Ariz. 1959). *Accord* § 1-1-108, MCA ("there is no common law in any case where the law is declared by statute"); Joseph Story, *Commentaries on Equity Jurisprudence* § 64 (12th ed. 1984) (where a statutory rule "is direct and [particularly] governs . . . a court of equity is . . . bound by it"). Accordingly, absent a clear indication of contrary legislative intent or acquiescence to preservation or application of specifically-defined equitable principles or remedies, non-statutory principles of equity generally may not defeat, contradict, or ameliorate specific rights affirmatively provided by statute. *See, e.g.*, *Kapor v. RJC Inv., Inc.*, 2019 MT 41, ¶ 32, 394 Mont. 311, 434 P.3d 869 (noting intended application of equitable estoppel to UCC contract cases except were "displaced by" specific UCC remedies); *623 Partners, LLC v.*

13

*Hunter*, 2016 MT 336, ¶ 23, 386 Mont. 24, 385 P.3d 963 (noting legislative intent to preserve/allow supplemental equitable remedies where not inconsistent with Uniform Fraudulent Transfer Act provisions); *Terry L. Bell Generations Tr. v. Flathead Bank of Bigfork*, 2013 MT 152, ¶¶ 23-25, 370 Mont. 342, 302 P.3d 390 (noting limited application of equitable estoppel to defeat/ameliorate statutorily specified non-judicial foreclosure sale procedure); *Kalfell Ranch, Inc. v. Prairie Cty. Coop. State Grazing Dist.*, 2000 MT 317, ¶¶ 22-24, 302 Mont. 492, 15 P.3d 888 (holding that money damages not available as alternative equitable remedy to specifically applicable statutory remedy); *Eagle Watch Invs., Inc. v. Smith*, 278 Mont. 187, 192-93, 924 P.2d 257, 260 (1996) (holding that alternative equitable remedy not available in contravention or in lieu of express landlord-tenant act provision); *Erickson v. Croft*, 233 Mont. 146, 150, 760 P.2d 706, 708 (1988) (noting limited application of equitable tolling to statutes of limitation); *LaForest v. Texaco, Inc.*, 179 Mont. 42, 48, 585 P.2d 1318, 1321 (1978) (noting limited application of equitable estoppel to statute of limitations); *Larson v. State*, 166 Mont. 449, 458, 534 P.2d 854, 859 (1975) (noting legislative intent to retain equitable injunction as available remedy within statutory property tax relief scheme); *Malvaney v. Yager*, 101 Mont. 331, 344-45,  54 P.2d 135, 141 (1936) (noting limited application of equitable estoppel to statutory mortgage foreclosure redemption deadline).

¶18    Here, § 70-30-315, MCA, specifically commands that the "condemnor *must* be assessed the condemnor's pro rata share of taxes for the land being taken" as of the earlier of date of summons or possession and that the "condemnor *must* be assessed for all taxes

14

accruing" thereafter prior to transfer of record title. Section 70-30-315, MCA (emphasis added). Regardless of the ongoing dispute regarding the proper form or forum for obtaining it, the property tax proration required by § 70-30-315, MCA, is a specific substantive right, affirmatively provided by statute without qualification except for satisfaction of its terms. Neither the City, County, nor District Court have cited any authority, or provided any legal analysis, demonstrating any clear indication of legislative intent or acquiescence to allow equitable unjust enrichment to preclude, defeat, or limit the specific property tax allocation right affirmatively granted and mandated by § 70-30-315, MCA. Nor are we aware of any. Thus, we hold that the District Court erroneously concluded that the equitable doctrine of unjust enrichment in any event precluded or defeated relief on Mountain Water's claim for property tax proration and related relief under § 70-30-315, MCA.

¶19 *2. Whether the District Court erroneously concluded as a threshold matter that § 70-30-315, MCA, would entitle Mountain Water to a general property tax refund under §§ 15-1-402(1)-(2), (6)(b)(i), and -406(1)-(3), MCA?*

¶20 Based on the property tax proration required by § 70-30-315, MCA, Mountain Water seeks a general property tax refund pursuant to §§ 15-1-402(1)-(2), (6)(b)(i), and -406(1)-(3), MCA. A contextual understanding of the larger statutory scheme under which Mountain Water seeks general property tax relief is thus necessary.

**General Property Tax Scheme Under Title 15, MCA.**

¶21 MDOR "has general supervision over the administration of the assessment and tax laws of the state . . . to the end that all assessments of property are made relatively just and

15

equal, at true value, and in substantial compliance with law." Section 15-1-201(1)(a), MCA. As pertinent here, the process of property tax assessment generally involves: (1) cataloguing and determining the assessed value (i.e. MDOR appraised market value) and equalized taxable value of all taxable property in Montana; (2) issuance of annual assessment notices (of the MDOR-appraised/assessed value and resulting taxable value) to all record owners of taxable property; (3) the annual reporting of the MDOR-assessed taxable values of taxable property to the local taxing units for determination of local tax levies; and (4) computation by MDOR for annual billing by the respective county treasurers of the resulting amount of taxes and assessments due on each taxable property. *See* §§ 15-1-101(1)(b), (1)(w), (2), 15-6-101, 15-7-101, -102, -138, -304 through -307, 15-8-101, -112, -201, -701, -707, 15-9-101, 15-10-202, -305(2), and 15-16-101, MCA. Based on MDOR assessments and computations, the respective county treasurers then annually issue property tax bills to the MDOR-assessed record owners of taxable property (notifying them of the first-half taxes due for that tax year, generally due on the ensuing November 30, and the second-half taxes due for that year, generally due on May 31 of the next year). Section 15-16-101, MCA.

¶22 Upon timely paying the subject taxes under protest pursuant to § 15-1-402(1)-(2), MCA, "[a]n aggrieved taxpayer may . . . [assert an] action . . . [for declaratory judgment]" that "an administrative rule or method or procedure of assessment or imposition of tax adopted or used by [MDOR] is illegal or improper" or that "a tax authorized by the state

16

or one of its subdivisions was illegally or unlawfully imposed or exceeded the taxing authority of" the taxing entity. Section 15-1-406(1)-(3), MCA.[7]

> If the action is finally determined adversely to the governmental entity levying the tax, then the treasurer of the municipality, county, or state entity levying the tax shall . . . refund to the person in whose favor the judgment is rendered the amount of the protested portions of the property tax or fee that the person holding the judgment is entitled to recover, together with interest from the date of payment under protest.

Section 15-1-402(6)(b)(i), MCA.

## Property Tax Allocation In Condemnation Proceedings
### Title 70, Chapter 30, MCA

¶23 Prior to 1981, Montana's eminent domain statutes did not expressly address the allocation of property taxes accruing on condemned properties during the pendency of the condemnation action prior to transfer of record title. Similar to the customary pro rata apportionment of previously assessed property taxes as of the date of title transfer in real estate sale transactions (i.e. payment by seller of previously assessed taxes through date of closing and satisfaction by purchaser of previously assessed taxes from the date of closing), apportionment of previously assessed property taxes occurred, without involvement of MDOR, as an incident of the final judgment, order, and transfer of title on condemnation under §§ 70-30-304(2) and -309, MCA. *See City of Billings v. Hunt*, 257 Mont. 99, 103, 847 P.2d 715, 718 (1993) (owner/condemnee remains responsible to pay property taxes

---

[7] This remedy "is the exclusive method of obtaining a declaratory judgment concerning a tax authorized by the state or one of its subdivisions" and thus "supersedes the Uniform Declaratory Judgments Act established in Title 27, chapter 8." Section 15-1-406(5), MCA.

until taking actually occurs); *City of Butte Hous. Auth. v. Bjork*, 109 Mont. 552, 555-56, 98 P.2d 324, 325-26 (1940) (government taking by eminent domain extinguishes outstanding property tax liability but condemnee's award subject to reduction for satisfaction of previously assessed tax liability through date of title transfer); *Helena Valley Irrigation Dist. v. State Highway Comm'n*, 150 Mont. 192, 199, 433 P.2d 791, 795 (1967) (statute preserving lien for previously assessed irrigation district taxes and assessments despite ownership transfer not applicable to transfer of ownership to state via condemnation); *Rutsen Estates, Inc. v. Hudson County*, 131 A. 637, 638 (N.J. 1926) (analogizing eminent domain treatment of property taxes to the "usual mode" of allocation of property taxes between parties in real estate sale transactions).[8] Thus, prior to 1981, the property tax proration date in condemnation proceedings was the date of record title transfer—previously assessed taxes accrued as of the date of title transfer were the sole responsibility of the property owner-condemnee and thus deductible for satisfaction of that portion of the tax debt from the final award in the condemnation proceeding. *See Bjork*,

---

[8] *See also City of Ontario v. Kelber*, 111 Cal. Rptr. 222, 223-25 (Cal. Ct. App. 1974) (condemnee's condemnation award subject to pro rata reduction for taxes due on the condemned property as of the date of title transfer—outstanding pro rata tax liability effectively a lien on condemnation award); *State ex rel. State Pub. Works Bd. v. Clyne*, 345 P.2d 474, 477 (Cal. Ct. App. 1959) (condemnation award subject to pro rata reduction for taxes due on the condemned property as of the earlier of date of title transfer or condemnor possession); *People ex rel. Dep't of Pub. Works v. Peninsula Title Guar. Co.*, 301 P.2d 1, 5 (Cal. 1956) (compensation award not subject to reduction for outstanding tax liability on condemned property prior to transfer of title but after condemnor took possession); *Moffat Tunnel Improvement Dist. v. Hous. Auth. of Denver*, 125 P.2d 138, 140 (Colo. 1942) (condemnation by eminent domain effects a lien for outstanding taxes on the compensation fund payable to condemnee); 26 Am. Jur. 2d *Eminent Domain* § 277 (2014) (in re similar approach adopted in Model Eminent Domain Code § 211(a)(3)).

109 Mont. at 555-56, 98 P.2d at 325-26; *Helena Valley Irrigation Dist.*, 150 Mont. at 199, 433 P.2d at 795. Upon notice of the transfer of record title, MDOR would then separately update the property tax record and prospectively assess any future property taxes to the new record owner if not exempt. *See* §§ 15-7-303(3), -304, -305, 15-8-101, -201, -307, -701, -704, -707(1), MCA.

¶24 However, in 1981, the Legislature enacted a new rule for proration of previously-assessed property taxes that accrued on the condemned property during the condemnation proceeding:

> **Proration of taxes**. The condemnor must be assessed the condemnor's pro rata share of taxes for the land being taken as of the date of possession or summons, whichever occurs first. The condemnor must be assessed for all taxes accruing after the date of possession or summons, whichever occurs first.

Section 70-30-315, MCA (as amended without significant change in 2001[9]). Though available legislative history is scant, the Legislature enacted § 70-30-315, MCA, as part of a larger bill in response to concerns of private landowners owners facing condemnation of large strips of land through their farm and ranch properties for a major privately-owned pipeline project. *See, e.g.*, *Senate Taxation Committee Hearing Minutes on Senate Bill*

---

[9] The 2001 Legislature generally amended Montana's eminent domain statutes "for the sole purpose of modernizing the language" to be more understandable without substantive change except for "specific[] enumerat[ion] [of] the public uses for which the power of eminent domain may be exercised" by the various public and private entities authorized throughout the Montana Code. 2001 Mont. L. ch. 125 (SB 7 Title and January 11, 2001, Senate Jud. Committee Hearing Minutes in re Sponsor Testimony (Sen. Mack Cole) and Proponent Testimony (Sen. Dan McGee)). Section 70-30-315, MCA, emerged substantively unchanged except for substitution of the term "condemnor" for the original term "plaintiff." 2001 Mont. Laws ch. 125, § 79.

*269*, 47th Sess. (Feb. 9, 1981) [hereinafter *1981 Senate Taxation Committee Hearing on Senate Bill 269*]. The stated purposes of the bill were to revise the methods of payment of compensation in eminent domain proceedings, to ensure that private property owners were compensated at current market value, and to deal with weed control concerns. 1981 Mont. Laws ch. 531 (SB 269 Title). Due to the primary focus on other aspects of the legislation, the available history indicates that nothing was said about the new property tax proration provision except:

> The . . . new . . . [rule] simply prevents taxes from being assessed on the condemned land twice and makes the plaintiff [(condemnor)] responsible for all taxes assessed on the land after the date of possession.

*1981 Senate Taxation Committee Hearing on Senate Bill 269*, 47th Sess. at 3 (Introductory Statements of Sen. Max Conover, Sponsor). We have since held that the purpose of § 70-30-315, MCA, was simply to provide condemnees a "better deal" than before in the form of a more favorable property tax proration date. *Mountain Water IV*, ¶¶ 14 and 16.

¶25 However, in *Mountain Water IV*, Mountain Water attempted to interject MDOR into the condemnation process by asserting, *inter alia*, that § 70-30-315, MCA, required it, upon notice of issuance of a condemnation summons, to immediately retroactively reassess previously assessed property taxes from Mountain Water to the City through the date of final title transfer. *See Mountain Water IV*, ¶ 4, *infra*. Mountain Water thus asserted that it was further entitled to an immediate general property tax refund of previously paid taxes that accrued from the date of the condemnation summons. *See Mountain Water IV*, ¶ 4, *infra*. Reading § 70-30-315, MCA, in context of the well-defined and preexisting

20

procedure specified by §§ 15-7-304 through -307 and 15-8-201, MCA, for assessing future property taxes to new owners upon a change of record title, MDOR asserted that it had no authority to change the previously assessed owner of the condemned property until due notice by realty transfer certificate of a change in record title from Mountain Water to the City. *Mountain Water IV*, ¶ 9. In an expressly limited holding, we held that § 70-30-315, MCA, did not affect Mountain Water's continuing duty, as the continued record owner of the property, to pay the property taxes on the condemned property through the date of record title transfer under §§ 70-30-304(2) and -309, MCA. *Mountain Water IV*, ¶¶ 15-16 and 18. We thus ultimately held that Mountain Water's claim for relief under § 70-30-315, MCA, was premature at that stage of the condemnation proceeding and that it could later "pursue *appropriate* remedies for refund, *reimbursement or compensation* . . . in the *appropriate* forums." *Mountain Water IV*, ¶ 18 (emphasis added).

¶26    Due to the limited nature of our holdings in *Mountain IV*, we must now clarify and limit some potentially confusing language in our analysis before squarely addressing for the first time the proper form or forum for obtaining the property tax proration required by § 70-30-315, MCA. With focus on the cross-assertions of Mountain Water and the amicus-City, and hearing nothing contrary from MDOR, we presumed that the "must be assessed" language in § 70-30-315, MCA, necessarily referred to action by MDOR outside and as a special exception to the usual procedure specified by Title 15, MCA, for assessment of property taxes to the new owner upon a change in ownership. *See Mountain Water IV*, ¶¶ 13 and 17 (characterizing § 70-30-315, MCA, as imposing a "different

21

assessment date than the usual" property tax assessment date under § 15-8-201(2)(a), MCA). However, based on our expressly limited holdings, we did not ultimately determine the appropriate remedy or forum for relief under § 70-30-315, MCA. *See Mountain Water IV*, ¶ 18. Thus, our presumptive discussion in *Mountain Water IV*, ¶¶ 13 and 17, regarding the effect of § 70-30-315, MCA, on the general property tax assessment process under Title 15, MCA, has no precedential value here.

¶27 The dispositive issue here as to the appropriate form or forum for obtaining relief under § 70-30-315, MCA, is necessarily a question of statutory construction. In that regard, our role is merely to discern and effect the manifest intent of the Legislature. *See* § 1-2-101, MCA. We must do so by first attempting to construe § 70-30-315, MCA, in accordance with the plain meaning of its express language in context of the larger statutory scheme in which the Legislature inserted it. *See* § 1-2-106, MCA; *Giacomelli v. Scottsdale Ins. Co.*, 2009 MT 418, ¶ 18, 354 Mont. 15, 221 P.3d 666.

¶28 In pertinent part, § 70-30-315, MCA, uses the passive infinitive "must be assessed." In plain meaning, "to assess" means "[t]o calculate the amount . . . of something." *Assess, Black's Law Dictionary* (11th ed. 2019). The related noun "assessment" thus means a "[d]etermination of the rate or amount of something, such as a tax or damages"; the "[*i*]*mposition* of something, such as a tax or fine, according to an established rate"; or the "the tax or fine so imposed." *Assessment, Black's Law Dictionary* (11th ed. 2019) (emphasis added). See similarly, *Assess, Merriam-Webster.com Dictionary*, https://perma.cc/9STM-9RTU ("to determine the rate or amount of []something," "such as

22

a tax, charge, or fine"; "*to impose* []something," "such as a tax," "according to an established rate"; "to subject to a tax, charge, or levy"; or "to make an official valuation of []property[] for the purposes of taxation" (emphasis added)). As referenced in § 70-30-315, MCA, the term "pro rata" means "proportionately according to an exactly calculable factor (such as share or liability)." *Pro rata*, *Merriam-Webster.com Dictionary*, https://perma.cc/RGC2-B72L. The related infinitive "prorate" similarly means "[t]o divide or distribute proportionally; to assess ratably," *e.g.*, to "prorate taxes between the buyer and seller." *Prorate*, *Black's Law Dictionary* (10th ed. 2014). See also *Prorate*, *Merriam-Webster.com Dictionary*, https://perma.cc/C886-SZZ4 ("to divide, distribute, or assess proportionately"). Thus, while clearly mandating the specified proportional allocation of property taxes that accrued during the pendency of the condemnation proceeding prior to record title transfer, the isolated language of § 70-30-315, MCA, could conceivably support two fundamentally different constructions—either (as presumed in *Mountain Water IV*, ¶¶ 13 and 17) to require independent action by MDOR outside both the condemnation proceeding and the usual procedure for ownership changes under Title 15, MCA, or, alternatively, to merely require the specified proration of previously paid property taxes by the court in the condemnation proceeding incident to final judgment and order of condemnation under §§ 70-30-304(2) and -309, MCA, as was the case with any necessary property tax proration before the Legislature provided a new proration date in § 70-30-315, MCA.

23

However, the apparent ambiguity quickly disappears upon reading § 70-30-315, MCA, in context of the larger statutory scheme in which the Legislature inserted it.

¶29   As enacted and by express reference to the terms *condemnor*, *condemnee*, *the land being taken*, and *the date of possession or summons*, the property tax proration required by § 70-30-315, MCA, exclusively arises and occurs in the larger context, and as an incident of, a condemnation proceeding under Title 70, chapter 30, MCA.  *See* §§ 70-30-101, -206(2), (4), and -301 through -306, MCA.[10]   In that regard, a Title 70 condemnation proceeding is essentially no more than a statutorily-prescribed, judicially-forced sale of private property for public use.  *See* §§ 70-30-101, -206(2), (4), and -301 through -306, MCA.  Prior to enactment of § 70-30-315, MCA, and by implication from §§ 70-30-304(2) and -309, MCA, any necessary property tax proration occurred as of the date of transfer of title, with deductive or additive effect on the amount of the total award adjudicated under § 70-30-304(2), MCA.  *See Bjork*, 109 Mont. at 555-56, 98 P.2d at 325-26 (condemnee's compensation award subject to reduction for satisfaction of any outstanding property tax liability accrued through date of transfer of title); *Peninsula Title Guar. Co.*, 301 P.2d at 5 (compensation award not subject to reduction for outstanding tax liability on condemned property prior to transfer of title but after condemnor took possession).  *Accord Helena Valley Irrigation Dist.*, 150 Mont. at 199, 433 P.2d at 795; *Kelber*, 111 Cal. Rptr. at 223-25;

---

[10] *See also K&R P'ship v. City of Whitefish*, 2008 MT 228, ¶ 71, 344 Mont. 336, 189 P.3d 593 (holding that condemnation court correctly excluded property tax proration from its final award to condemnee in inverse condemnation case because § 70-30-315, MCA, applies only to condemnation proceedings under Title 70, chapter 30, MCA).

24

*Clyne*, 345 P.2d at 477; *Moffat Tunnel Improvement Dist.*, 125 P.2d at 140. As of 1981, § 70-30-315, MCA, merely provides a more condemnee-favorable property tax proration date with no indication of Legislative intent to effect any other change to the preexisting process specified by Title 70, chapter 30, MCA. *Mountain Water IV*, ¶ 14.

¶30 Contrary to the presumption of all in *Mountain Water IV,* the use of the word "assessed" in § 70-30-315, MCA, does not necessarily refer to or implicate MDOR's property tax assessment practices under Title 15, MCA. Prior to enactment of § 70-30-315, MCA, the terms "assessed" and "assessment" were already in use and had particular contextual meaning in §§ 70-30-302, -304, and -311, MCA, without requirement for any action or involvement of MDOR under or incident to Title 15, MCA. As similarly used in §§ 70-30-302, -304, and -311, MCA (referring to the amounts of compensation and litigation expenses respectively "assessed" and "reassessed" by the condemnation commissioners and court for inclusion in the final judgment of condemnation under § 70-30-304(2), MCA), use of the word "assessed" in § 70-30-315, MCA, clearly refers to the required pro rata assessment, i.e., apportionment, of property taxes between the condemnee and condemnor, *by the court in the condemnation proceeding* as an incident of final judgment and order under §§ 70-30-304(2) and -309, MCA.

¶31 As we have previously recognized, nothing in the language or legislative history of § 70-30-315, MCA, evinces any effect or intent to alter the preexisting and well-defined process previously specified by the Legislature in §§ 15-7-304 through -307 and 15-8-201, MCA, for assessing property tax on a new owner upon a change of record title. *Mountain*

25

*Water IV*, ¶ 14 (§ 70-30-315, MCA, simply established a more favorable "tax proration date" with "no additional or alternative process to accompany this simple adjustment" and without "address[ing] [MDOR's] assessment practices . . . [under] the Realty Transfer Act . . . previously . . . enacted in 1975").[11] As recognized in *Mountain Water IV*, § 70-30-315, MCA, has no effect on the usual MDOR procedure for assessing property taxes to a new property owner under §§ 15-7-304 through -307 and 15-8-201, MCA, where, like here, the condemnor does not take possession of the condemned property prior to the change of record title under § 70-30-309(2), MCA. *See Mountain Water IV*, ¶ 17 (thus "resolv[ing] [MDOR's] . . . concern that it cannot cease to assess Mountain Water on property it still owns" (internal punctuation omitted)). In context of the larger statutory scheme in which the Legislature inserted it, § 70-30-315, MCA, applies exclusively within the context of Title 70 condemnation proceedings as an incident of final judgment and order of condemnation under §§ 70-30-304(2) and -309, MCA, with no effect on the preexisting procedure specified by §§ 15-7-304 through -307 and 15-8-201, MCA, for assessment of property taxes to a new owner by MDOR upon a change of record title.

---

[11] Before and after enactment of § 70-30-315, MCA, the requirements of the Realty Transfer Act (Title 15, chapter 7, part 3, MCA) expressly continued to "appl[y] to *all* transfers" of property, as defined by § 15-7-303, MCA. Section 15-7-307, MCA (emphasis added). The Act defines a "transfer" of realty as "an act of the parties *or of the law by which the title to real property is conveyed from one . . . to another.*" Section 15-7-303(3), MCA (emphasis added). The transfer of record title from a condemnee to a condemnor under § 70-30-309(2), MCA, is unquestionably a "transfer" of realty, as defined by § 15-7-303(3), MCA, and thus subject to the requirements of the Act pursuant to § 15-7-307, MCA. The Legislature is presumed to be aware of prior enactments pertinent to new enactments. It thus had no need to provide any new or alternative process to accomplish "the simple adjustment" provided by § 70-30-315, MCA.

¶32 A procedural walk-through the pertinent Title 70 and Title 15 statutes manifests the presumptively intended, smoothly meshed manner in which §§ 70-30-304(2), -309, -315, MCA, handle the required property tax proration of previously assessed taxes in a condemnation proceeding and how §§ 15-7-304 through -307 and 15-8-201, MCA, then separately handle the future assessment of property taxes to the new owner upon a record title change. Upon final determination of compensation and the condemnee's "necessary expenses of litigation" in a condemnation proceeding, the court must enter a judgment declaring the condemnor's the right to take and use the condemned property as authorized upon payment of the specified compensation and litigation expenses. Sections 70-30-304(2), -305, and -306, MCA. Based on the foregoing analysis, the judgment under § 70-30-304(2), MCA, must also include the proration of previously paid property taxes required by § 70-30-315, MCA (effectively requiring condemnor reimbursement of taxes paid by the condemnee prior to the earlier of court-ordered possession or transfer of title under §§ 70-30-309(2) or -311, MCA). *See* §§ 70-30-304(2), -309, -311, and -315, MCA; *Mountain Water IV*, ¶¶ 15-18 (continuing duty of condemnee duty to pay property taxes through earlier of date of condemnor possession or transfer of title).[12]

---

[12] In the event of any outstanding condemnee tax liability on the condemned property for taxes accrued prior to the proration date specified by § 70-30-315, MCA, the ultimate condemnation judgment award under § 70-30-304(2), MCA, is subject to a corresponding reduction for satisfaction of the tax liability. *See* § 70-30-315, MCA; *Bjork*, 109 Mont. at 555-56, 98 P.2d at 325-26; *Helena Valley Irrigation Dist.*, 150 Mont. at 199, 433 P.2d at 795; *Kelber*, 111 Cal. Rptr. at 223-25; *Clyne*, 345 P.2d at 477; *Peninsula Title Guar. Co.*, 301 P.2d at 5; *Moffat Tunnel Improvement Dist.*, 125 P.2d at 140.

¶33　Upon satisfaction of the final judgment of condemnation entered under § 70-30-304(2), MCA, the court must enter a final order of condemnation specifying and declaring satisfied the essential incidents of the condemnation. *See* § 70-30-309(1), MCA. Title to the condemned property then vests in the condemnor upon the required supplemental filing of the final order of condemnation in the real property records in the office of county clerk and recorder. Section 70-30-309(2), MCA. As a condition of acceptance for filing of the final order, the clerk and recorder must require the condemnor to concurrently file an MDOR-specified realty transfer certificate to be forwarded by the Clerk to MDOR. Sections 15-7-304, -305, and -307, MCA. Upon receipt of the realty transfer certificate, MDOR must prospectively note the record change of ownership in the official property tax record and, if taxable in the hands of the new owner, thereafter assesses future property taxes to the new owner. Sections 15-7-304, -304(2), -309(2), 15-8-101, -201, -307, -701, -704, and -707(1), MCA.[13] If tax-exempt in the hands of the new owner-condemnor, the property simply stands in an exempt status on the updated property tax record. *See* §§ 15-8-101, -201, and -701(2), MCA. Accordingly, we hold that § 70-30-315, MCA, exclusively pertains and applies to condemnation proceedings under Title 70, chapter 30, MCA, and requires the condemnation court to determine and assess the specified proration of previously paid property taxes incident to and as part of the final

---

[13] Upon acquisition, property owned by municipal corporations, such as the City, are exempt from taxation under Montana law. Mont. Const. art. VII, § 5(1)(a); § 15-6-201(1)(a)(ii) and (iv), MCA.

28

judgment and order of condemnation otherwise required by §§ 70-30-304(2) and -309, MCA.

¶34 Upon timely paying disputed taxes under protest pursuant to § 15-1-402(1)-(2), MCA, "[a]n aggrieved taxpayer may" assert an action for declaratory judgment that the protested taxes were the result of: (1) the use of an "illegal or improper" property tax assessment rule, method, or procedure by MDOR; (2) a tax "illegally or unlawfully imposed" by a taxing entity; or (3) a tax in excess of a taxing entity's taxing authority. Section 15-1-406(1)-(3), MCA.

> If the action is finally determined adversely to the governmental entity levying the tax, then the treasurer of the municipality, county, or state entity levying the tax shall . . . refund to the person in whose favor the judgment is rendered the amount of the protested portions of the property tax or fee that the person holding the judgment is entitled to recover, together with interest from the date of payment under protest.

Section 15-1-402(6)(b)(i), MCA.

¶35 Here, on the asserted ground that § 70-30-315, MCA, required MDOR to retroactively reassess previously paid property taxes on the condemned property to the City from the date of the condemnation summons through the date of transfer of title under § 70-30-309, MCA, Mountain Water seeks a general property tax refund pursuant to §§ 15-1-402(1)-(2), (6)(b)(i), and -406(1)-(3), MCA. However, § 70-30-315, MCA, exclusively pertains to the property tax proration to be assessed by the court in the condemnation proceeding. Thus, for purpose of § 15-1-406(1)-(3), MCA, the disputed right of a condemnee to property tax proration, and resulting reimbursement, in a condemnation proceeding under § 70-30-315, MCA, does not constitute or relate to the use

29

of an "illegal or improper" property tax assessment rule, method, or procedure by used MDOR, a tax "illegally or unlawfully imposed" by a taxing entity, or a tax in excess of a taxing entity's taxing authority. Consequently, the remedy of property tax protest, declaratory judgment, and general property tax refund under §§ 15-1-402(1)-(2), (6)(b)(i), and -406(1)-(3), MCA, is inapplicable and unavailable as a matter of law for enforcement of a condemnee's right to property tax proration under § 70-30-315, MCA. We hold that the District Court erroneously concluded that § 70-30-315, MCA, entitled Mountain Water Company to a property tax refund under §§ 15-1-402(1)-(3), (6)(b)(i), and -406(1)-(3), MCA, but for application of equitable unjust enrichment.

¶36     *3. Whether Mountain Water contractually waived its right to property tax proration and reimbursement from the City pursuant to § 70-30-315, MCA?*

¶37     As it did below, the City asserts pursuant to the parties' 2017 condemnation action settlement agreement that Mountain Water waived any right to seek property tax proration and reimbursement from the City under § 70-30-315, MCA. Based on Mountain Water's narrow characterization of its claim as merely a claim for property tax relief under §§ 15-1-402(1)-(2), (6)(b)(i), and -406(1)-(3), MCA, the District Court did not address the merits of the City's waiver claim. In light of our holding that Mountain Water's claim for property tax proration under § 70-30-315, MCA, is not enforceable or remedial as a claim for property tax relief under §§ 15-1-402(1)-(2), (6)(b)(i), and -406(1)-(3), MCA, we briefly address the City's contention.

¶38     Based on its failure to address the City's waiver claim on cross-appeal and its accompanying careful focus and characterization of its claim as a preserved claim for

property tax relief under §§ 15-1-402(1)-(2), (6)(b)(i), and -406(1)-(3), MCA, Mountain Water tacitly concedes that it waived any claim against the City under § 70-30-315, MCA, in the parties' 2017 settlement agreement. Even a cursory review of the pertinent language of the settlement agreement, *infra*, clearly indicates that, in pertinent part, the manifest mutual intent and effect of the agreement was for Mountain Water to waive any claim for property tax reimbursement or relief from or against the City while at the same time preserving the right to seek a general property tax refund pursuant to §§ 15-1-402(1)-(2), (6)(b)(i), and -406(1)-(3), MCA, based on § 70-30-315, MCA. The stipulated Final Judgment in Condemnation entered pursuant to § 70-30-304(2), MCA, expressly incorporated the terms of the settlement agreement by reference. Based on the pertinent language of the parties' 2017 settlement agreement, we hold that Mountain Water made a knowing and intelligent contractual waiver of its right under § 70-30-315, MCA, to property tax proration and reimbursement from the City in the condemnation proceeding.

¶39     *4. Whether the District Court erroneously concluded that Mountain Water's subsequent assertion of a general property tax refund claim did not breach the parties' 2017 condemnation action settlement agreement?*

¶40     While Mountain Water waived any claim against the City under § 70-30-315, MCA, the parties' 2017 settlement agreement expressly preserved its right to thereafter seek a general property tax refund pursuant to §§ 15-1-402(1)-(2), (6)(b)(i), and -406(1)-(3), MCA, based on § 70-30-315, MCA. We hold that the District Court correctly concluded that Mountain Water's subsequent assertion of a claim for a general property tax refund

31

under §§ 15-1-402(1)-(2), (6)(b)(i), and -406(1)-(3), MCA, was not a breach of the parties' settlement agreement.

## CONCLUSION

¶41 In summary, we hold that the District Court erroneously concluded that the equitable doctrine of unjust enrichment in any event precluded or defeated relief on Mountain Water's claim for property tax proration and related relief under § 70-30-315, MCA. However, we hold that § 70-30-315, MCA, requires the specified property tax proration to occur in the condemnation proceeding, without involvement of MDOR, as an incident of the final judgment and order of condemnation otherwise required by §§ 70-30-304(2) and -309, MCA. We hold that the District Court thus erroneously concluded that, but for application of equitable unjust enrichment, § 70-30-315, MCA, entitled Mountain Water to a general property tax refund under §§ 15-1-402(1)-(2), (6)(b)(i), and -406(1)-(3), MCA. In that regard, we hold further that Mountain Water contractually waived its right to property tax proration and reimbursement from or against the City under § 70-30-315, MCA. However, we hold that the District Court correctly concluded that Mountain Water's subsequent assertion of a claim for a general property tax refund pursuant to §§ 15-1-402(1)-(2), (6)(b)(i), and -406(1)-(3), MCA, was not a breach of the parties' 2017 settlement agreement.

¶42 We will affirm a lower court decision that reaches the correct result even if for the wrong reason. *Hudson v. Irwin*, 2018 MT 8, ¶ 12, 390 Mont. 138, 408 P.3d 1283; *Talbot v. WMK-Davis, LLC*, 2016 MT 247, ¶ 6, 385 Mont. 109, 380 P.3d 823; *Estate of Willson*

32

*v. Addison*, 2011 MT 179, ¶ 29, 361 Mont. 269, 258 P.3d 410; *Cheff v. BNSF Ry. Co.*, 2010 MT 235, ¶ 37, 358 Mont. 144, 243 P.3d 1115; *Wells Fargo Bank v. Talmage,* 2007 MT 45, ¶ 23, 336 Mont. 125, 152 P.3d 1275; *Jerome v. Pardis*, 240 Mont. 187, 192, 783 P.2d 919, 922 (1989).  Accordingly, for the foregoing reasons, we affirm the District Court's ultimate denials of Mountain Water's request for declaratory judgment pursuant to § 15-1-406(1)-(3), MCA, and its related request for a general property tax refund pursuant to § 15-1-402(6)(b)(i), MCA.


/S/ DIRK M. SANDEFUR


We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON


Justice Jim Rice, concurring in part and dissenting in part.

¶43    I concur with the Court's conclusion in Issue 1 that "the property tax proration required by § 70-30-315, MCA, is a specific substantive right, affirmatively provided by statute without qualification except for satisfaction of its terms," and that the equitable doctrine of unjust enrichment cannot "preclude, defeat, or limit the specific property tax allocation right affirmatively granted and mandated by § 70-30-315, MCA." Opinion, ¶ 19.

¶44    Under Issue 2, the Court provides an expansive analysis of the relief that a condemnee may obtain under § 70-30-315, MCA, and concludes, despite the contrary

33

positions taken by the parties before the courts in *Mountain Water IV*, and this Court's ruling in response to those positions, that the statute does not permit a refund of taxes paid under protest during the litigation, after all. Opinion, ¶¶ 30-31. Rather, the Court concludes the statute makes financial responsibility for taxes, as assessed from the earlier of the condemnor's date of possession or service of the condemnation summons, an incident of condemnation for which the condemnee may seek reimbursement from the condemnor within the proceeding. Opinion, ¶¶ 30-31. Then, under Issue 3, the Court determines that Mountain Water waived the refund claim within the 2017 settlement agreement and the Stipulated Final Judgment of Condemnation. Opinion, ¶ 39.[1] I cannot concur with the Court's resolution of these issues.

¶45 To briefly review, Mountain Water and the MDOR came before the courts in *Mountain Water IV* in agreement about the nature of the relief available to Mountain Water under § 70-30-315, MCA, but in dispute about the timing and process for obtaining that relief. As stated in MDOR's briefing before the District Court in that case:

> *The Department concurs* with Mountain Water's interpretation of § 70-30-315, MCA. *The Department agrees* that if the city ultimately proves successful in its condemnation action, Mountain Water would be *entitled to a refund of taxes* paid under protest as of the date of summons. [(Emphasis added.)]

---

[1] Curiously, the Court also reasons that Mountain Water's "failure to address the City's waiver claim on cross-appeal" contributes to a waiver of its refund claim. Opinion, ¶ 39. However, Mountain Water expressly responded to the City's cross-appeal waiver argument in its combined response-reply brief, at pp. 21-22.

Thus, it was not merely that "Mountain Water attempted to interject MDOR into the condemnation process," Opinion, ¶ 26, but that MDOR had concurred with that statutory interpretation before the court. While the parties' positions developed further as the litigation continued and the City joined the litigation as *amicus curiae*, *see Mountain Water IV*, ¶¶ 9-10, this Court's opinion was premised upon this basic posture of the case, which, as the Court here acknowledges, formed the "presumptive" foundation of our analysis. Opinion, ¶ 27.

¶46 Consequently, in *Mountain Water IV* we resolved the issue in dispute—the timing of the relief—and stated in conclusion that Mountain Water "was not entitled to a refund at this time"—a clear implication that the refund remedy, to which the parties had acknowledged, would occur upon the closure of the condemnation case. *Mountain Water IV*, ¶ 18. Further, we decided the timing issue upon an interpretation of the statute the Court acknowledges today was a viable rendering of the wording of the statute. Opinion, ¶ 29. It was upon this decision that Mountain Water, just weeks later, expressly reserved its claim to a refund in the condemnation settlement agreement.

¶47 "[A] prior decision of this Court resolving a particular issue between the same parties in the same case is binding and cannot be relitigated." *State v. Gilder*, 2001 MT 121, ¶ 9, 305 Mont. 362, 28 P.3d 488. We decided *Mountain Water IV* upon an interpretation of § 70-30-315, MCA, which the Court today acknowledges was viable. The issue of obtaining a refund under that interpretation of § 70-30-315, MCA, may not have been finally resolved by the analysis in *Mountain Water IV*, but it was certainly the premise

35

for that decision, and was part of the holding in that case (Mountain Water is "not entitled to a refund *at this time*"), such that Mountain Water should not be faulted for relying on it to reserve the refund claim. Clearly, the Court today rejects the statutory interpretation of § 70-30-315, MCA, employed to resolve the dispute in *Mountain Water IV*, but which instead should be deemed to be the law of the case.

¶48 The Court's new analysis of the statute's application is well supported, and I may well have joined it upon a fresh review. However, we are not presented here with a fresh review, but with a contrary decision in *Mountain Water IV*. At a minimum, given the history of this case and the law applied therein, the new statutory interpretation should be applied prospectively. The Court's decision qualifies under the narrow exception for prospective application, first, because it has established "a new principle of law either by overruling precedent or by deciding an issue of first impression whose result was not clearly foreshadowed." *Ereth v. Cascade County*, 2003 MT 328, ¶ 29, 318 Mont. 355, 81 P.3d 463 (overruled on other grounds in *Labair v. Carey*, 2012 MT 312, ¶ 23, 367 Mont. 453, 291 P.3d 1160); *Dempsey v. Allstate Ins. Co.*, 2004 MT 391, ¶¶ 29-30, 325 Mont. 207, 104 P.3d 483. Far from the result here being clearly foreshadowed, the Court in *Mountain Water IV* actually signaled the opposite result. For that reason, the next consideration, "equity of retroactive application," also weighs heavily in favor of prospective application, because Mountain Water clearly relied upon our earlier decision to its detriment. *Ereth*, ¶¶ 29-30; *Dempsey*, ¶¶ 21, 30.

36

¶49    I would reverse the District Court to permit Mountain Water to seek the refund, consistent with our decision in *Mountain Water IV*.

/S/ JIM RICE

Justices Beth Baker and Laurie McKinnon join in the dissenting Opinion of Justice Rice.

/S/ BETH BAKER
/S/ LAURIE McKINNON